[S. F. No. 4614.    In Bank.—December 23, 1909.]

## HIRST PARKIN, Respondent, v. GRAYSON-OWEN COMPANY (a Corporation), Appellant.

NEGLIGENCE—RUNAWAY TEAM—IMPROPER HITCHING OF TEAM—VIOLATION OF ORDINANCE—NONSUIT.—In an action to recover damages for an injury caused by the running away of a team of horses, alleged to have resulted through the failure of the defendant to properly fasten the horses when left standing in a city street, in violation of an ordinance which prohibited such animals to be left so standing unless they were in some way properly secured, either by hitching or being under the control of a suitable person, the evidence on behalf of plaintiff reviewed and held sufficient to warrant denial of nonsuit.

ID.—EXPERT TESTIMONY AS TO METHOD OF HITCHING.—In such action, it is not permissible for a witness for the plaintiff to testify as an expert to the effect that the method adopted by the defendant in hitching his team was not a proper and safe one for the tying of horses. Such testimony, however, is without prejudice, if the witness bases his opinion of the unsafety of the method on the liability of the bridle to give way, and it is admitted that no such injury to the bridle happened at the time of the accident.

ID.—PRECAUTIONS TAKEN AFTER ACCIDENT—NEW METHOD OF HITCHING.—Evidence of precautions taken by the defendant after the acci-

dent, in the using of other methods of tying his horses, is not admissible to show a negligent condition at the time of the accident.

Id.—Improper Cross-Examination.—The admission of such evidence is not justifiable on the ground that it was proper cross-examination of a witness for the defendant, where such witness had merely testified to his method of driving the horses after the accident, and had not testified as to the manner of hitching them.

Id.—Instructions—Hitching One Horse of Team—Negligence Question for Jury.—In such an action, where the evidence showed that only the horse of the team standing next to the curb was hitched at the time of the accident, an instruction that a failure to hitch the other horse was a violation of the ordinance was erroneous. The sufficiency of a method adopted for hitching, within the meaning of the ordinance, varies with the circumstances of each particular case, and is a question for the jury in view of all the evidence. The error in such instruction was not cured by another inconsistent instruction which correctly stated the law for the purpose of determining the question of the defendant's negligence.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, for Appellant.

Reed, Nusbaumer & Black, B. H. Griffins, and Stanley Moore, for Respondent.

THE COURT.—Defendant appealed to this court from a judgment in favor of plaintiff for two thousand dollars, and from an order denying its motion for a new trial. The appeal was transferred to the district court of appeal for the third appellate district for determination. In that court on December 21, 1908, judgment was given reversing the judgment and order denying the new trial. A petition for hearing by this court was granted, and the judgment of the appellate court vacated and the matter transferred to this court for hearing and determination.

The opinion of the district court of appeal, written by Mr. Justice Burnett, was as follows:—

"This is an appeal from the judgment and the order denying a motion for a new trial in an action for damages for the injury caused to plaintiff by the running away of de-

fendant's team of horses attached to a butcher wagon, which collided with and upset a buggy in which plaintiff was riding. Plaintiff claimed that the horses were not fastened as required by a certain ordinance of the city of Oakland, which, as far as material here, is as follows: 'No person shall leave or allow any horse or mule to be or remain standing upon any of the public streets of the city of Oakland, unless such animal is in some way properly secured, either by hitching or being under the personal control of some person of suitable age.'

"1. The court properly denied the motion for a nonsuit. There was sufficient evidence to justify the inference that defendant violated said ordinance.   Indeed, the evidence for plaintiff warrants the conclusion that defendant failed to exercise ordinary care in the manner of securing the team. The horses were left standing on a prominent street while the driver went into a restaurant to get his lunch.   Only one of the horses was hitched and that by a strap snapped in the bit and tied to a telegraph pole.   The jury from the evidence had a right to believe that the strap was not strong enough nor properly adjusted to secure the horse to which it was attached and that under the circumstances both horses should have been hitched.   At any rate, the showing made by plaintiff was sufficient to carry the case beyond the motion for a nonsuit.

"2. Appellant contends that the court erred in allowing expert testimony as to the proper hitching of a horse.   The matter is presented by the record as follows: 'Q. Let me ask you, Mr. Wright, whether or not using one of these hitching straps that snaffle into the horse's bit and fastening it to a pole or ring or anything else at the other end, it don't make any difference, let me ask you whether that method is a proper and safe one for the tying of horses?   Objection as not being proper subject for expert testimony. . . . . A. No, simply because when it is put in the bit of a horse, if he pulls back on it, the bit is liable to pull apart or the first buckle back from the bit will give away, or close up to the ear will give away or some part of the bridle will give way with the snaffle.   This snaffle will be stronger than the leather in the bridle, and therefore, away goes the bridle, if the snaffle don't break.'

"The application of the rule as to expert testimony is often

attended with great difficulty, although the rule itself is clear
enough. In *Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal.
59, [27 Pac. 592], it is said: 'Section 1870, subdivision 9, of
the Code of Civil Procedure provides that the opinion of a
witness may be given "on a question of *science, art* or *trade,*
when he is skilled therein." The general rule, however, is
that witnesses must testify to facts, and not to opinions, and
that whenever the question to be determined is the result of
the common experiences of all men of ordinary education, or
is to be inferred from particular facts, the inference is to
be drawn by the jury, and not by the witness. Where the
inquiry relates to a subject whose nature is not such as to
require any peculiar habits or study in order to qualify one
to understand it, or when all the facts upon which the opinion
is founded can be ascertained and made intelligible to the
court or jury, the opinion of the witness is not to be received
in evidence. If the relation between the facts and their
probable results can be determined without any special skill
or training, the facts themselves must be given in evidence
and the conclusions or inferences must be drawn by the jury.'
In that case the conclusion as to negligence depended upon the
kind of coupling pin used by defendant on its street-car and
this question was asked of a witness: 'From your experience in
driving those cars and using those pins, would you say that
that was a safe pin—the straight pin?' The supreme court
said: 'Whether this pin was "safe," that is, unattended with
personal risk to the driver, was an issue in the case for the
jury to determine from all the circumstances that might be
shown,' and it was held that it was not proper for the opin-
ion evidence to be given, as the verdict of the jurors was
to be based upon their own opinions from the facts and should
not be influenced by that of the witness. It is equally clear
in the case at bar that the very issue to be determined by
the jury was whether the method adopted by the defendant's
employee for tying or securing the horses was a safe and
proper one. The conclusion as to that question would neces-
sarily determine whether plaintiff was entitled to recover. If
the method adopted was not a safe and proper one then de-
fendant was chargeable with negligence. Indeed, the only
allegation of the complaint in that respect is that: 'The driver
of one of defendant's delivery wagons to which there was

attached two horses, did insecurely, negligently and improperly hitch one of said horses, and then, without hitching the other horse at all, left said horses,' etc. In effect, therefore, the question was equivalent to asking the witness whether in his opinion negligence was imputable to the driver, and hence to his employer. It is manifestly a case where all the facts and circumstances in relation to the transaction could be disclosed and made intelligible to the jury as the correct basis for the verdict, and it was an invasion of the jury's province to seek to substitute the opinion of a witness as to defendant's conduct for that of the jurors themselves who were capable and charged with the duty of observing and determining the relation between the facts and the consequences resulting therefrom.

"In *Enright* v. *San Francisco & S. J. R. R. Co.,* 33 Cal. 230, it was held that the opinion of experts is not admissible on the question of the sufficiency of a fence to turn cattle. It is said: 'The facts of the fence, bars and barway included, were to be testified to by the witness; but the question of sufficiency, assuming it to have been in the case, was with the jury and not with them.'

"In *Shafter* v. *Evans,* 53 Cal. 32, the judgment was reversed because the trial court admitted the opinion of witnesses as to the safety of a corral.

"In *Kauffman* v. *Maier,* 94 Cal. 269, [29 Pac. 481], it is held that it was error for the court to admit expert testimony 'as to whether it is more dangerous for a shaft having a rough surface or end to project into the room than it would be if the shaft were smooth, and as to whether a towel could be more safely taken from a smooth revolving shaft than a jagged and rough one.'

"In *Linberg* v. *Glenwood Lumber Co.,* 127 Cal. 598, [60 Pac. 176], the questions held to be objectionable were: 'Can you state to the jury whether or not it is more safe for a teamster to sit on a bare load of lumber without a seat, or whether it is more safe with a seat for him?' and 'Can you state whether or not short lines used to drive horses are as safe as long lines without knots?'

"There is much plausibility, however, in respondent's contention that the objection of appellant is not broad enough to reach the vice of the question and also that it is apparent the answer could not have prejudiced the defendant. In reference

to the objection itself respondent says: 'While questions in this form should not be put if objected to as to form, we would still contend that we had a right to bring out from skilled and experienced men in this line the various methods for tying horses and the facts recommending each method. For example, we would be entitled to show that bridles were weak in certain places, and that where a horse held by the bit pulled back, the strain came on the bridle close to the top of his head, where there were buckles or weak places.' Hence the contention is made that the general objection that the subject is not a matter of expert testimony was properly overruled and reference is made to the case of *Girandi* v. *Electric Imp. Co.*, 107 Cal. 120, [48 Am. St. Rep. 114, 40 Pac. 108], as illustrating the distinction sought to be made. In that case plaintiff had been injured by coming in contact with a wire on the roof of a house and he 'was allowed over the objection of defendant to ask certain questions of an expert electrician as to what matters should be taken into consideration in locating electric wires carrying such currents as these in question, and whether it was proper or prudent management to put them so low over a metallic roof. The objection was, that it was the province of the jury to determine such matters and not a proper subject for expert testimony.' The supreme court, in discussing the matter, through Mr. Justice Temple, says: 'The cases do undoubtedly hold that an expert cannot be asked whether a structure is a safe one or whether certain methods are prudent, but all hold that facts may be elicited from the witness from which the conclusion inevitably follows. To illustrate: In *Bemis* v. *Central Vt. R. R. Co.*, 58 Vt. 636, [3 Atl. 531], an expert was held not allowed to testify 'that it was not prudent to use a certain hoisting apparatus with less than three men, on a stone of two tons' heft.' Yet the court said there might have been shown 'the number of men required, danger in its use by a less number, its safety and adequacy when properly used,' and added that the jurors could as well decide for themselves. . . . The difference is largely one as to the form of the question and while I do not mean to say that it is immaterial or that such an error may never be cause for a reversal, I do not think it should be so held here. The answer of the witness gave the facts in full, and explained what methods would have been safe. All this

information might have been obtained by proper questions. So here, it would have been proper to ask Mr. Wright what would be the effect of fastening a strap to the snaffle and the same information would have been obtained. It is true he says it was not a safe way of hitching the horse but that obviously is his conclusion from the statement that 'some part of the bridle will give way' if the horse pulls back. And again, since it was admitted that there was no injury to the bridle at the time of the accident, it is hard to see how the answer of the witness could have hurt defendant.

"3. On cross-examination of the driver, George Vincent, called by defendant, the following proceedings took place:—

" 'Q. Where are these horses now? Objected to as immaterial, irrelevant and incompetent. Objection overruled. Defendant excepts. A. One of them is in the company's possesssion. Q. On what team is he working? Same objection, ruling and exception. A. On the city team. The other horse was sold. I don't know where he is. Q. Why was he sold? Same objection, ruling and exception. A. It was sold because we did not particularly have any use for him then. We got in some more new horses. . . . Q. What strap did you use, or what means did you adopt for the tying of these horses after the accident? Objected to as to the tying of the team subsequent to the accident as immaterial, irrelevant and incompetent, and not proper cross-examination.' The objection was overruled and the witness answered 'I used a rope,' and he proceeded to state, over objection, how he tied the rope.

"The ruling in relation to what became of the horses may be disregarded as appellant, by the objection, should have called the court's attention to the fact that it was not proper cross-examination and besides, the answer was probably not prejudicial; but the method adopted for tying the horses after the accident presents a more serious question.

"As stated by the supreme court, through Mr. Justice Angellotti, in *Helling* v. *Schindler*, 145 Cal. 312, [78 Pac. 713] : 'It is now well settled in this state in accordance with the rule prevailing generally elsewhere that evidence of precautions taken after the happening of the accident is not admissible to show a negligent condition at the time of the accident.' Other cases are therein cited where the matter is elaborately discussed and the wisdom of the rule is clearly demonstrated.

"However, the rule is not questioned by respondent but the contention is made that the questions were in the line of proper cross-examination. We fail to find any inquiry in the direct examination as to the method of tying the horses subsequent to the accident. The nearest approach to it is found in the statement of the witness: 'I had been driving this pair of horses from November, 1903, up to the time of the accident. In fact, I drove them up until about four months ago, that is since the accident. I drove them after the accident just the same.' Hitching the horses is a subject entirely distinct from driving them and we cannot agree with counsel that the questions were within the legitimate scope of cross-examination.

"4. Among other instructions the court gave the following, No. 23: 'It is provided by city ordinance that any horse left standing unattended on the public streets of the city of Oakland shall be properly secured by hitching, and if the jury believes that defendant's bay horse, which stood farthest away from the curb on San Pablo Avenue while defendant's team was left standing by the driver unattended was not properly secured by hitching, then I instruct you that the defendant was guilty of a violation of the city ordinance.'

"The evidence, without conflict, showed that only the black horse next to the curb was hitched but the driver testified on behalf of the defendant that 'I set it (the brake) hard down, chock-a-block sufficiently tight to block the wheels so that they were set as near as I could so they would slide and I wrapped the reins three or four times around the brake.' We think it should have been left to the jury to determine whether this was a sufficient compliance with the requirement of the ordinance. In other words, we consider it unreasonable to hold that when a team is left standing and unattended the ordinance requires in any event that every horse constituting the team should be hitched. The ordinance should have a reasonable construction in harmony with its purpose to secure the safety of the citizens in their property and persons. Whether that purpose could be best subserved by requiring every horse of a team to be tied depends upon various circumstances of each particular case which should be left to the determination of the jury in view of all the evidence. Here the jury was instructed as a matter of law that 'if the bay horse was not properly secured by hitching' then the ordinance was violated.

It was virtually admitted that the bay horse was not hitched. Hence, the court might as well have instructed the jury to find for the plaintiff on the issue of negligence. The question, as we view it, was properly presented in instructions 31 and 36 as follows: 'If you should believe. from the evidence that the defendant's hitching was safe and sound just before the accident and still if you should further find that such a hitching strap when fastened to the bit of one horse and not fastened in any way to the other does not properly secure the team, then the defendant was guilty of negligence in fastening its team in such a manner upon the occasion in question,' and 'If you find that upon driving up to the sidewalk, upon dismounting to go into the restaurant, Vincent the driver set the brake hard, wound the reins around the brake and then fastened one end of the hitching strap reasonably fit for that purpose to the bit of one of the horses and the other end to a post at or near the edge of the sidewalk, you must consider all these circumstances in determining whether the driver used reasonable care and precaution to secure the horses in thus hitching them. If you find, as a fact, that the driver used reasonable care and caution in hitching the horses, then the ordinance was not violated and your verdict must be for the defendant.' In other words, the jury was told that whether the horses were improperly secured and the ordinance violated must be determined by a consideration of all the circumstances, but in said instruction 23 the inquiry was limited to the single circumstance of the failure to hitch the bay horse. It is true that instructions are to be read and considered as a whole, but there is no room here for the application of the principle stated in *Stephenson* v. *Southern Pacific Co.*, 102 Cal. 143, [34 Pac. 618, 36 Pac. 407), and other cases, that 'the fact that when taken separately some of them may fail to enumerate in precise terms and with legal accuracy propositions of law does not necessarily render them erroneous; but it is sufficient if all the instructions taken together, and not being inconsistent with each other or confusing, shall give to the jury a fair and just notion of the law upon the point discussed.' The said instructions are inconsistent and confusing. The direction that a violation of the ordinance follows from the determination of one fact by necessary implication excludes the consideration of other facts and circum-

CLVII Cal.—4

stances. If the law had been correctly given in said instruction 23 it might be held that the others were too favorable to defendant and that the error was without prejudice, but we are of the opinion that this conclusion would necessitate a stricter construction of the ordinance than is warranted.

"In view of the foregoing we do not see how the verdict can be upheld."

Learned counsel for plaintiff strenuously urge that the evidence adduced by them from the driver as to the change in the method of hitching the horses after the accident was properly elicited on cross-examination in view of matters testified to by him on direct examination. The only testimony so given on direct examination on which reliance is thus based is set forth in the opinion of the district court of appeal. We agree with that court in the view that it did not warrant the cross-examination.

In view of the facts of this case the trial court, by instruction 23, clearly told the jury that in order to comply with the ordinance, the bay horse must be separately hitched, which, concededly, had not been done. The two horses were securely attached one to the other, and remained so attached throughout the runaway and up to the time of the injuries caused plaintiff thereby, and the question in the case was not whether one or the other of the horses was properly secured by hitching, but whether the team of two horses was so secured. One of the two horses could not be so secured unless the other also was, and there could be no reason for singling out the bay horse and directing the jury that unless it was "properly secured by hitching," the defendant was guilty of a violation of the city ordinance, other than to inform them that to comply with the ordinance each horse of the team must be separately hitched. This was the necessary implication from the instruction and we do not see how it could have been understood by the jury in any other way, or how its prejudicial effect was obviated by the giving of other instructions inconsistent therewith.

After mature consideration, we are satisfied with the views expressed in the opinion of the district court of appeal and adopt the same as the opinion of this court.

The judgment and order denying a new trial are reversed.