[Civ. No. 1246.   Third Appellate District.—August 1, 1914.]

HIRST PARKIN, Respondent, v. GRAYSON–OWEN COMPANY (a Corporation), Appellant.

NEGLIGENCE — ORDINANCE REQUIRING HORSES TO BE HITCHED — TEAM BREAKING AWAY AND INJURING PERSON IN STREET—INSTRUCTIONS TO JURY.—Where a driver leaves his team tied to a telephone pole in the street while he takes lunch, and the team runs away and injures the driver of another vehicle, there being an ordinance that no person shall leave any horse standing upon any of the public streets

of the city unless the animal is in some way properly secured, either by hitching or being under the personal control of some person of suitable age, it is not necessarily misleading, in an action by the injured person to recover damages, to instruct the jury that if they believe from the evidence that in order properly to secure the defendant's team a strap or rope should have been passed through the bit and around the neck of one or both horses, the mere snapping of the hitching strap into the bit of one of them would constitute negligence, notwithstanding there is no evidence upon which to base the instruction, if the jury are also instructed at the request of the defendant upon the same subject, and the question of what constitutes the proper hitching of a horse is left for them to decide as a matter of common knowledge.

ID.—PRECAUTIONS TAKEN BY DRIVER TO SECURE TEAM—OMISSION FROM INSTRUCTION.—The instruction is not erroneous in omitting precautions taken by the driver to secure the team by setting the brake and wrapping the reins around it, before leaving the team, since the ordinance expressly provides that a horse must be "properly secured," either by being hitched or left in personal control of some person of suitable age.

ID.—INSTRUCTIONS AS TO MANNER OF HITCHING TEAMS—WHETHER CONFLICTING.—Such instruction is not inconsistent with instructions given at the request of the defendant which in themselves are a correct and easily comprehended guide to the jury as to requirements of the ordinance in the manner of hitching teams.

ID.—INCONSISTENT INSTRUCTIONS—WHETHER PREJUDICIAL.—Inconsistent instructions must be plainly misleading or confusing to make them prejudicial.

ID.—STRAP USED TO TIE TEAM—WHETHER FREE FROM DEFECTS—QUESTION FOR JURY.—If in such action it is conceded that the way the driver secured the team was a reasonable and sufficient compliance with the ordinance, nevertheless the strap used therefor should have been free from defects that would weaken or make it unsafe; and the jury have the right to pass judgment upon this point and are not bound to accept the opinion of the driver that the strap was in his belief safe and sound.

ID.—COMMON-LAW DUTY OF DRIVERS—INSTRUCTIONS CONCERNING.—Although the action is based on the violation of an ordinance requiring certain things to be done when a team is left standing in the streets, it is not prejudicial, though perhaps unnecessary, to give instructions as to the common-law duty of drivers in such circumstances. In a sense the ordinance is but a statement of a common-law principle.

ID.—FRIGHTENING OF TEAM BY FIRING PISTOL—WHETHER RELIEVES DRIVER FROM LIABILITY.—If the horses were negligently hitched, the driver was liable for their running away and injuring the plaintiff, notwithstanding they were frightened by a boy firing a toy pistol.

Id.—Proximate Cause—Intervening Wrongful Act.—The independent wrongful act, to constitute the proximate cause of displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission.

Id.—Appeal—What Points may be Regarded as Having Been Decided by Appellate Court.—No point in a case can be said to have been decided on appeal, except the one specifically dealt with and such others as may be said to be necessarily determined by the decision of the point under discussion.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, for Appellant.

Stanley Moore, and B. F. Griffins, for Respondent.

CHIPMAN, P. J.—The cause of action is for damages arising out of the alleged violation of the following ordinance of the city of Oakland: "No person shall leave or allow any horse or mule to be or remain standing upon any of the public streets of the city of Oakland unless such animal is in some way properly secured either by hitching or being under the personal control of some person of suitable age." This is the second appeal taken by the defendant in the case and is from the judgment and order denying motion for a new trial in an action for personal injuries. The decision on the first appeal is reported in 157 Cal. 41, [106 Pac. 210].

In its opening brief appellant makes a statement of facts which is sufficient to give an understanding of the case, although respondent says that it is inaccurate in some not very important matters, inasmuch as the errors claimed relate to instructions given or refused. We shall use the statement as made by appellant:

"The plaintiff complains that the defendant's delivery wagon, to which there were attached two horses, a black and a bay, were improperly hitched, and that by reason thereof the said horses broke from their fastening, ran north on San Pablo Avenue, turned easterly into Sixteenth Street and col-

lided with the buggy in which the plaintiff, as driver, was riding with a doctor, overturning the buggy, throwing plaintiff to the pavement and injuring his knee.

"The driver of the delivery wagon, George Vincent, drove up in front of a restaurant on San Pablo Avenue, between 10:30 and 11 o'clock in the forenoon. Vincent had left the barn about 5 o'clock in the morning, and had completed his delivery. He was an experienced driver; was twenty-nine years of age, and for eight years had been a stage driver in Siskiyou County. He carried with him a hitching strap. He testified that he drove up to the restaurant, set his foot brake down hard and sufficiently tight to block the wheels, wrapped the reins three or four times around the brake, got down, snapped the snap of the hitching strap in the bit of the black horse, and tied it around the telegraph post. He further said that after he had ordered his luncheon he heard the report of a pistol. Before the driver could get to the door of the restaurant the pistol was fired again and the team broke loose.

"Vincent had previously testified that before he had gone into the restaurant he spoke to a small boy who had a toy pistol in his hand, and cautioned him not to fire.

"The strap that Vincent used for the purpose of hitching the horses was an ordinary hitching strap that had been patched, and there was considerable testimony at the trial as to this patching or repairing of the strap; plaintiff claimed that the strap was old and rotten, and insufficient for the purposes of a hitching strap.

"I. D. Tobin, a police officer, called by the plaintiff, testified that he was on duty that day, and before the runaway he noticed that the team was very nervous, and that the bay horse was crowding the black one up against the sidewalk. The black horse was pulling to and fro on the strap that he was tied to. 'I noticed that the black horse was tied.' On cross-examination this officer stated: 'There was nothing in the action of the horses, or in the way in which they were hitched, to arouse my suspicion that there was any danger at all. So far as I saw everything was all right.' He also testified on cross-examination that 'If the horse had not been properly hitched at that time it would have been my duty to have taken action in the matter. I did nothing. I saw how the horse had been hitched, how it was hitched at that

time. I patted the horse, he calmed down.' Immediately afterward the runaway occurred.

"Defendant complains that the lower court committed error in the instructions it gave to the jury, asserts that the case was not properly left for decision by the jury, and takes this appeal in order that the issues involved may be submitted to a jury under proper instructions."

1. It is contended that the court erred in giving the following instruction, number 22:

"If you believe from the evidence that in order to have properly secured the defendant's team upon the occasion in question a strap or rope should have been passed through the bit and around the neck of one or both of the horses in said team, then in such case I charge you that the defendant was guilty of negligence in merely snapping the hitching strap to the bit of one of said horses even though you further believe that said strap was entirely sound."

The evidence was that the strap was fastened in the bit of the black horse next to the telegraph post.

Appellant makes several objections to this instruction: A, That the court had no right to suggest to the jury how the horses might have been fastened—viz, by passing a strap or rope through the bit and around the neck of one or both; B, It was prejudicial to suggest that to secure the team the strap should have been passed around the necks of both horses; C, That the court in so charging disregarded the law of the case as laid down on the former appeal—157 Cal. 41, 48, [106 Pac. 210, 214], where the court said: "We consider it unreasonable to hold that when a team is left standing unattended the ordinance requires in any event that every horse constituting the team should be hitched"; D, The instruction leaves out the important things done by the driver, Vincent, to secure the team, i. e., in setting the brake down and wrapping the reins around it; E, The instruction in effect assumes that there is but one way properly to secure a horse, by passing the rope or strap around his neck and through his bit, and where there are two horses, the same should be done with both.

Appellant recalls the fact that at the former trial expert testimony was received upon the subject of hitching horses. At the present trial appellant says, in its brief: "Plaintiff

25 Cal. App.—18

carefully refrained from calling experts at the time, and there was absolutely nothing said at the trial about passing a rope or strap around the horse's neck and through the bit." The brief states: "The court knew, and so did the jury, that the strap was snapped into the bit of the black horse, that it was not passed around the neck of either animal." It is contended that "the instruction contained an element nowhere found in the evidence and was not fair to the defendant." Also, that it was prejudicial "in that it suggested that to secure the team properly the strap should have been passed around the neck of both horses" and that the instruction "assumes there is but one way properly to secure a horse" or two horses where there are two, that is, by the way pointed out in the instruction; and finally that the instruction disregarded the law of the case as held in the former appeal above quoted. We have thus grouped the claims made in paragraphs of the brief marked A, B, C, and E. Assuming it to be true that there was no evidence at all as to hitching a horse by passing the strap through the bit and around the neck, the most that can be said of the instruction is that it suggests something entirely outside the evidence. . The jury were told that *if they believed from the evidence* that in order properly to secure defendant's team a strap or rope should have been passed through the bit and around the neck of one or both horses, merely snapping the hitching strap into the bit of one of the horses would constitute negligence under the ordinance. The ordinance required that the horses should "in some way be properly secured either by hitching or being under the personal control of some person of suitable age." If, therefore, the evidence had convinced the jury that the horses could have been "properly secured" *only* in the particular way pointed out in the instruction, less than that—"merely snapping the hitching strap to the bit of one horse"—would have been a violation of the ordinance. But there was no evidence upon which to base the instruction and hence it seems to us that the only question is—Did it necessarily have a tendency to mislead the jury?

At defendant's request the court gave the following instructions:

"34. You are further instructed that the ordinance does not prescribe any particular manner of hitching—it does not prescribe that a rope should be used in preference to a leather

strap, nor does it prohibit the use of a hitching strap with a snaffle, nor does it prescribe the strap should be fastened about the animal's neck rather than to the bit. The ordinance merely requires the horse to be properly secured by hitching or that it be under the control of a person of suitable age. If you find that Vincent secured the horses in the present case by hitching them as a reasonable and prudent person using ordinary care, skilled in the handling of horses and experienced in driving would have done, then you would be justified in finding that the horses were properly secured by hitching, and for their subsequent breaking away and injuring the plaintiff the defendant would not be liable, and if you so find your verdict should be for the defendant.

"35. You are also instructed that the said ordinance does not in terms prescribe that where two horses attached to a wagon, as in the case at bar, are left standing in the street, both horses should be hitched; if you find that one of the two horses attached to defendant's delivery wagon was properly secured by hitching when Vincent, the driver, left the wagon and went into the restaurant, and that to properly secure both horses by hitching a reasonable and prudent man, skilled in the handling of horses and experienced as a driver, would have hitched but one horse, as was done by Vincent in this case, then your verdict should be for the defendant."

It will be observed that notwithstanding there was, as defendant claims, no evidence referring to passing the strap around the neck of one or both horses to "properly secure" them, the suggestion was found in these instructions and was as much out of place here as in the instruction complained of and appellant was equally responsible for the suggestion. Waiving that fact as immaterial in view of the want of evidence on the subject, it seems to us, conceding the instruction 22 should not have been given, that it was not necessarily misleading, for the instructions, 34 and 35, given at defendant's request, placed the matter very clearly before the jury and left them to decide upon the evidence before them whether the ordinance had been violated; the question of what would constitute the proper hitching of a horse was left with the jury as matter of common knowledge. (157 Cal. 41, [106 Pac. 210].)

The law of the case, enunciated in the former appeal, was that it was error to instruct the jury that it was negligence not to have properly secured both horses. Said the court: "We consider it unreasonable to hold that when a team is left standing and unattended the ordinance requires in any event that every horse constituting the team should be hitched." The instruction in question, as we read it, left the matter with the jury upon the evidence before them, and as there was no evidence with regard to passing the strap around the neck of one or both horses that feature was eliminated from the case.

That the instruction omitted the fact that Vincent secured the team by setting the brake and wrapping the reins around it was not error. Since the ordinance expressly provides that a horse "properly secured" must be hitched or left in personal control of some person of suitable age, the fact could properly be omitted. If, however, this fact should have been considered by the jury they had the benefit of it in the following instruction given at defendant's request: "If you find that upon driving up to the sidewalk upon dismounting to go into the restaurant, Vincent, the driver, set the brake hard, wound the reins around the brake and then fastened one end of the hitching strap, reasonably fit for that purpose, to the bit of one of the horses, and the other end to a post at or near the edge of the sidewalk, you must consider all these circumstances in determining whether the driver used reasonable care and caution to secure the horses in thus hitching them."

It is further contended that instruction numbered 22 is inconsistent with instructions 34 and 35 above quoted. If we are correct in our view of instruction 22, the jury were not called upon to consider the passing the strap through the bit and around the neck of one of the horses, because there was no evidence upon which to base a belief that such method of hitching was involved. Inconsistent instructions must be plainly misleading or confusing to make them prejudicial. Instructions 34 and 35 were given at defendant's request and were in themselves a correct and easily comprehended guide to the jury. We can discover no inconsistency between them and number 22, and, certainly none such as would justify a reversal of the case. Nor do we think, apart from any alleged inconsistency between these instructions, that instruction 22

was prejudicial, conceding error in giving it. If the jury believed from the evidence that the *only* way to have properly secured the team was to pass the strap through the bit and around the neck of one of the horses the court was justified in telling the jury that merely to snap the hitching strap to the bit of one of the horses would have constituted negligence. The latter part of the instruction must necessarily be correct following the assumptions of the first part of the instruction.

Respondent contends that the verdict can be sustained upon other acts of negligence independent of the method of hitching the horses or of the fact that but one horse of the team was hitched. Hence, if objectionable, the instruction complained of is without prejudice. It was alleged in the complaint and the evidence concerning it was made the subject of instructions, that defendant failed to furnish the driver of the team with a proper hitching strap. Vincent testified: "The hitching strap I had with me was a strap I had on the horses, the strap that broke when I had my runaway. It was the same strap that I found in the warehouse or mending room. The strap was sewn and there was a rivet in it also, one rivet. The strap was pared down. I should say that the strap had been used more in that portion than it had up next to the horse's bit; that it was some thinner from use." He testified that he "considered it to be a safe hitching strap" and saw nothing about it "to indicate that it was weak." He testified: "I mean to say that the strap was not weaker in the center by reason of this sewing together and paring of ends and thin from use. It was worn apparently a little bit. I do not mean to say that the thinning of the strap from use, if it had become a little thinner from use, would not weaken it at all; I do not mean that exactly. Certainly it was weaker after tying over this here sewed piece. . . . I riveted the strap together about a month after the accident. I have not used it since, not at all. It is now the same as it was immediately after the accident except that it is riveted together, and except that I have thinned down the edges there on riveting them together. Q. I understand you to say that the strap had been stitched as well as riveted once? A. Yes, it had. Q. What has become of the stitching? A. Well, I tore them off, smoothed them down when I riveted it together The stitching went clear through both ends. It is now

lapped over further. I think I cut off two and a half inches from one piece where the snaffle was before I riveted it. The Court: You don't mean to say it is exactly in the same condition with the exception of the rivet, because a piece of it has been cut off? A. Well, I don't know how to express that. I cut off the piece where the stitching marks were." He was asked why he "did not leave it in the condition it was. A. Well, that is something I could not explain myself, and why I put the strap back together. I fastened them together not because I wanted to use the strap again, but simply because I wanted to fasten it together in order to hold both pieces together."

Respondent invokes the familiar rule that a general verdict found for a party litigant in a case imports a finding in his favor upon all the issues in the case, citing Hayne on New Trial and Appeal, section 236, and cases there cited. It is urged that if the verdict can be supported on the theory that the defendant was guilty of negligence in furnishing an improper hitching strap, it must stand. The court instructed the jury that if they believed from the evidence that defendant "failed to furnish its driver, George Vincent, with a hitching strap strong enough to properly secure its team when it should be left standing unattended on the public streets . . . and that while said team was left standing . . . it . . . became frightened by the firing of a toy pistol and broke loose by reason of being improperly secured and therefore ran away . . . then in such case your verdict must be against the defendant . . . '' The correctness of this instruction is not challenged. We cannot say the jury were unwarranted in finding that the strap was not such as would properly secure the horses when hitched there with it. If it be conceded that the way Vincent secured the team was a reasonable and sufficient compliance with the ordinance, certainly the means used —the strap—should have been free from defects that would weaken or make it unsafe. The jury had the right to pass judgment upon this point and were not bound to accept the opinion of the driver that the strap was in his belief safe and sound. It is not necessary, however, to rest the decision upon respondent's contention and we do not pass upon it.

Some instructions were given (9, 10, and 14) which, appellant complains, related to the common-law duty of drivers of horses upon public streets, whereas the action is for violating

an ordinance requiring certain particular things to be done. Instruction 9 is illustrative of the other two: "The Grayson-Owen Company while operating its delivery wagons upon the public streets of this city, was in duty bound to exercise ordinary care, vigilance and foresight to prevent its teams from running away and injuring others upon the streets and using such streets in common with it." It was perhaps unnecessary to give these instructions in view of others dealing more directly with the immediate cause of the accident, but we cannot see that they were abstract statements of duty wholly dissociated from the facts of the case. If there were no ordinance requiring horses being used for delivery purposes in a city to be properly secured when left unattended, we think it would be negligence at common law to neglect this precaution against the happening of just such an accident as we have here. In a sense the ordinance is but the statement of a common-law principle. At any rate, it is plain enough to our minds that there was nothing prejudicially misleading in these instructions or calculated to divert the minds of the jury from the issues in the case. The instructions we think quite consistent with the ordinance.

Respondent calls attention to the fact that all the instructions objected to by appellant, particularly instruction 22, were given at the former trial and excepted to but were not commented upon in the opinion reversing the judgment. We have not felt at liberty to treat the points now made as "deemed to have been passed upon as without merit." The fact may have some significance, but no point in a case can be said to have been decided except the one specifically dealt with and such others as may be said to be necessarily determined by the decision of the point under discussion.

Error is claimed in the instruction given and in the instruction refused as to the effect of an independent intervening cause. It was alleged in the answer that a small boy discharged a pistol twice near the horses, frightening them and "causing them to spring forward and break said hitching strap causing them to run away; that said hitching strap was sound and was a perfect hitching strap" and the horses broke away from their fastening and ran "on account of the carelessness and negligence and thoughtlessness of said small boy in discharging said pistol and not otherwise." Defendant requested, but was refused, several instructions upon this sub-

ject, one of which will illustrate the point now made: "Damages cannot be recovered in an action for personal injuries, such as in the present one, when an independent act of another person, such as a boy's firing off a pistol near the horses intervened between the driver, Vincent's, leaving the team, and the injury to the plaintiff, if that injury would not have occurred but for such act."

Vincent testified that when he went into the restaurant to get his lunch he saw a small boy with a toy pistol standing on the sidewalk almost opposite his team; that he cautioned the boy not to snap the pistol; that, after entering the restaurant, he heard the report of the pistol and started immediately for his team and as he reached the door he heard another report and before he got through the door the horses broke loose. The court gave the following instruction: "I charge you that it is immaterial in this case, so far as plaintiff's right to recover damages is concerned, whether a small boy fired off a toy pistol, thereby frightening defendant's horse or not, provided you believe from the evidence that said horses were improperly and negligently hitched by a weak and defective strap and that they were able to break loose by reason of such improper and negligent hitching." Appellant relies upon a rule which when applied to a proper case may be said to be well settled—"that an injury is not actionable which would not have resulted from the act of negligence, except for the interposition of an independent cause." Respondent aptly replies that "counsel has lost sight of the fact that if the horses were negligently hitched by a weak and defective strap that this was a continuing act of negligence. Every moment the horses were so hitched the defendant was negligent. His negligence was continuing. Under such circumstances, the act of the boy in firing the pistol is not an independent act, but a mere concurrent act, and the defendant is liable notwithstanding." Among the cases, in our appellate courts, illustrating the principle are *Pastene* v. *Adams,* 49 Cal. 87, which was a case of piling timbers so that some of the ends protruded and when run into negligently were thrown down, injuring plaintiff; *Barrett* v. *Southern Pacific Co.,* 91 Cal. 296, [25 Am. St. Rep. 186, 27 Pac. 666], was a turntable case; *Spear* v. *United Railroads,* 16 Cal. App. 637, [117 Pac. 956], was the case of a collision between an express wagon and a street car.

The doctrine was quite exhaustively treated by Mr. Justice Henshaw in *Merrill* v. *Los Angeles Gas & Electric Co.,* 158 Cal. 499, 504, [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534], where the plaintiff was injured by the explosion of gas which the defendant gas company had negligently allowed to escape and which was ignited through the negligence of the proprietor of the restaurant where the gas was escaping. After giving some examples to show the application of the principle involved, the learned justice says: "The cases serve to illustrate the true rule, which is that the independent wrongful act, to constitute the proximate cause of displacing the original primary cause, must be so disconnected in time and nature as to make it plain that the damage occasioned was in no way a natural or probable consequence of the original wrongful act or omission."

The case here falls clearly within the class treated in *Merrill* v. *Los Angeles Gas & Electric Co.* If the horses were negligently hitched, and this negligence was the cause of the injury, defendant's liability cannot be escaped because of the contributory negligence of the small boy. As said, in the case last cited: "Each is and both are the proximate cause of the injury." The instruction given was a correct statement of the law and it was not error to refuse the instructions requested by defendant.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 31, 1914, and the following opinion then rendered thereon:

CHIPMAN, P. J.—No new points are made and, while it is not improbable that we have mistaken the force of defendant's principal objection to the judgment—namely, that instruction numbered 22 given by the court was prejudicial error—we see no reason for opening the case for further argument.

Appellant is in error in assuming that it was said in our opinion heretofore filed that this "is the fourth judgment and order denying a motion for new trial." The statement, as it appears in the opinion on file, is: "This is the second appeal

taken by the defendant in the case and is from the judgment and order denying motion for new trial.'' It was not our intention to express any opinion on the merits, for we had none, and feel quite sure that nothing in the opinion can be so understood; but, if so, we freely withdraw the same.

The petition is denied.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 30, 1914.