Albright v. Bruner.

---

### August F. Albright

v.

### Joseph Bruner.

|  |  |
|---|---|
| 14 | 319 |
| 72 | 581 |

|  |  |
|---|---|
| 14 | 319 |
| 93 | ²534 |

1. Fences.—When a general law prescribes what shall be deemed a "sufficient" fence, an agreement requiring a "sufficient" fence, without a more particular description, will be held to refer to and adopt the standard prescribed by such general law.

2. Agreement as to fence.—A partition fence may be built and the statutory height may be waived by agreement, in which case the agreement would control as to its sufficiency.

3. Instruction.—An instruction that "all he is required to prove is that his fence then and there was sufficient to turn ordinary stock." *Held*, that although the case would not be reversed for the giving such instruction, yet the court is of opinion that the terms "not extraordinarily breachy" are preferable in point of clearness to "ordinary."

4. Verdict against the weight of evidence.—Where, after a fence had been erected by appellant, he and appellee's grantor agreed to

"keep in repair" or "keep up" each an allotted portion of the fence, which agreement was acquiesced in by appellee when he obtained title. *Held*, that in an action brought by appellee for damages occasioned by the fence not being in proper repair, the burden would be upon him to show that the damages were not due to his own neglect to keep the fence in proper repair. As the evidence preponderates clearly in favor of appellant's part of the fence being good and sufficient, the verdict is set aside as contrary to the evidence.

APPEAL from the Circuit Court of Lee county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed February 29, 1884.

Messrs. BARGE, RATHBUN & BARGE, for appellant.

Mr. A. K. TRUSDELL, for appellee.

PLEASANTS, J. On appeal from a justice of the peace appellee here recovered in the circuit court a judgment upon verdict for $35, against appellant, for damages by the latter's cattle to his crops.

The parties owned adjoining lands divided by a fence eighty rods in length, which had been built by appellant some seventeen years before the trial. A verbal agreement was afterward made between him and appellee's grantor which specified the parts to be maintained by each and provided that they should be kept "in repair." This agreement being made known to appellee when he acquired his title, was acquiesced in by him.

There is no dispute that on the occasions in question the cattle got through appellee's part, but the controversy is whether it was at the time in such repair as to give him a right of action for damages so done.

It was confessedly an inch or two short of four feet in height, and the point having been saved by instructions asked and refused, it is contended that this fact alone was a complete and conclusive defense under sections 2, 20 and 21 of Ch. 54 R. S. 1874. Counsel cite T. & W. Ry. Co. v. Thomas, 18 Ind. 215, and Enwright v. S. F. & S. J. R. R. Co., 33 Cal. 230, to the effect that when a general law prescribes what shall be deemed a "sufficient" fence, a special statute, and by parity of rea-

soning an agreement, requiring a "sufficient" fence, without a more particular description, will be held to refer to and adopt the standard prescribed by such general law. We are not disposed to question the soundness of this construction, although in Crawford v. Dupuy, 17 Cal. 308, it was held that such a contract required a fence of the particular character described by the statute "or at least an inclosure equivalent in its capacity to exclude cattle." Nor are we prepared to hold that Sec. 2 of Chap. 54, above referred to, does not apply to all fences that are now required by law, that is, to outside fences in those localities where stock are lawfully allowed to run at large, and to partition fences, unless its application is waived by the parties. These questions, however, in our judgment, do not arise upon this record, because of their agreement. That they might thereby waive the statutory requirement as to height was expressly held in the case cited from the 33d Cal. *supra*, and that in this State a partition fence may be so established was assumed as clear in D'Arcy v. Miller, 86 Ill. 102; and in McCormick v. Tate, 20 Id. 337–8, in which case the agreement would control as to its sufficiency. Here, as already stated, it was so established after it had been erected by appellant. It was composed of different materials in different parts. Appellant was to maintain twenty rods, in part of hedge, at each end, and appellee the forty between, which was made of posts and boards. What was its height when so established or when appellee acquired his title and assumed his obligation is not shown, nor does it appear that it was less when the cattle got through it. The evidence as to the terms of the agreement does not show it was to be maintained as a "legal," or "sufficient" fence, but only that the parties were to "keep up" (as appellant stated it) or "keep in repair" (according to appellee) their respective parts of the one then standing. From which it would seem that they did not contemplate a fence strictly of the height prescribed by the statute, but simply that the one then standing should be kept in such repair as to make it, irrespective of its height, reasonably sufficient to turn stock not extraordinarily breachy.

The language of the instruction given for plaintiff touch-

ing this point, was that "all he is required to prove is that his fence then and there was sufficient to turn ordinary stock."

It is true that in C. & A. R. R. Co. v. Utley, 38 Ill. 413, the Supreme Court held such instruction properly refused, saying: "A good and sufficient fence must be, not merely one which will turn ordinary stock, for a slight barrier might do that, but one that will turn stock even though, to some extent, unruly." We do not perceive any clear difference. We take it, ordinary stock is to some extent unruly—at least, ordinarily breachy. The Supreme Court itself, in later cases, has treated the phrase "sufficient to turn ordinary stock" as fairly expressing the law. Thus, in Scott v. Wirshing, 64 Ill. 102, the only reason given for holding it was not error to refuse such an instruction in that case, was that the law was sufficiently given in the one preceding it, which used instead, the terms "stock not breachy." And in Scott v. Buck, 85 Id. 336, they say: "The real question for the jury was whether the fence was good and sufficient, regardless of its height, to turn ordinary stock. If it was, then the plaintiff was entitled to recover; otherwise, not." Stock that is "ordinary" in this respect must be such as is not extraordinarily unruly or breachy, and vice versa. We would not, therefore, reverse the judgment for the giving of this instruction, although we think the terms "not extraordinarily breachy" preferable in point of clearness to the term "ordinary."

But we reverse it because the verdict was against the evidence, and ought to have been set aside for that reason.

The burden was upon the plaintiff to show that the damages sustained were not occasioned by his own neglect to keep the fence in proper repair according to the agreement. It is clearly shown that the defendant was not in fault; his part of the fence was good and sufficient; the cattle never got through it, but always through that of the plaintiff; and further, that they were not breachy. The inference would be that plaintiff's part of the fence was insufficient to turn ordinary stock. And such is the overwhelming weight of the evidence. His own description of it at the place of the breach

Albright v. Bruner.

is that "it was a three board fence, a good strong fence, nearly four feet high, posts eight feet apart, the lower edge of the bottom board was about nine inches from the ground, boards six inches wide and about nine inches apart." Several other witnesses on his part concur in this description of the height, and the materials and their arrangement; but he alone speaks of its strength or sufficiency, and he, as is seen, only in general terms and as matter of opinion or conclusion. On the other hand, the defendant, his three sons and three other witnesses who, so far as appears, are wholly disinterested, testify to the contrary and give their reasons in detail. It was old and worn out. Some of the posts were rotted off and propped up in some places by small sticks or pieces of boards. Some of the boards had been broken and pieces nailed on. Emmert said he "wouldn't trust it to save anything," and Charles Albright that he "could pull over three or four panels." Where the cattle got through the fence was found down but no board was broken and the center post was rotted off. As to these particulars of its defects, there is no contradiction. A fair explanation of the trouble would seem to be, that there was inviting pasture on plaintiff's side, that the fence was so low that cattle not breachy would attempt to graze over it, and that the rotted posts could not resist the pressure.

On this subject there can hardly be said to have been a conflict of testimony. It is one witness interested to the fullest possible extent in the event, speaking in general terms and by way of opinion, against "seven men who render a reason," of whom six are without interest and three wholly unbiased. What can be said of this finding more favorable than that it was capricious? If a verdict is ever to be set aside as contrary to the weight of evidence this appears to be a proper case.

The ruling of the circuit court on the question of recoupment is approved, but for the refusal to set aside the verdict as against the evidence and grant a new trial, the judgment is reversed and the cause remanded.

Reversed and remanded.