### W. C. McKee, Appellee, v. J. E. Trisler, Appellant.

1. ANIMALS—*scienter as element of action against owner of vicious animal.* In an action against the owner of a bull which broke into plaintiff's close and gored his mules, causing the death of one and severely injuring another, it is not necessary for plaintiff to aver and prove that the bull in question was an animal of vicious propensities and that his owner had knowledge of such fact.

2. STATUTES—*"fence" statute not repealed by implication by act prohibiting stock from running at large.* The provisions of Cahill's Ill. St. ch. 54, ¶ 20, making the owner of cattle which break into the inclosure of another person through a legal fence as defined in paragraph 2, liable for damages caused thereby are not repugnant to or inconsistent with the provisions of Cahill's Ill. St. ch. 8, ¶ 1, prohibiting the running at large of live stock, especially in view of the provision of paragraph 20 that a legal fence shall not be a condition precedent to the maintaining of an action for injuries done by animals running at large; and the earlier act was not impliedly repealed by the later one.

3. DAMAGES—*when verdict for injury to domestic animals not excessive.* A verdict of $200 for the death of one mule and severe injuries to another mule, resulting from the goring of such mules by defendant's bull which broke into plaintiff's close, is not excessive.

4. PLEADING—*when variance not shown between pleading and proof in action for injuries to animals.* There is no variance between a declaration for damages for the death of a mule which was gored by defendant's bull which broke into plaintiff's close, where it is alleged "that from said injuries the mule then and there did die" and the proof which shows that the veterinary surgeon killed the mule with chloroform, where it is shown that after being gored by the bull the mule was down on its side disemboweled and unable to get up and that it was impossible to save its life.

5. ANIMALS—*sufficiency of instruction in trespass for injuries to animals.* In an action in trespass for injuries to plaintiff's mules which were gored by defendant's bull which broke into plaintiff's close from an adjoining field owned by defendant, it is not error to instruct the jury, in substance, to find for plaintiff if they find from the preponderance of the evidence that he owned the mules in question, that they were on land owned by him, that defendant owned the bull, that it was on land belonging to defendant, that such land adjoined that of plaintiff in which the mules were pastured and that the two fields were separated by a legal fence in good repair, and that the bull broke through such fence and gored the mules, causing the injuries in question, and that in such state of proof it would be immaterial whether the fence was a partition fence by agreement of the parties, or whether they had each agreed to keep up certain portions of the fence, or which end of the fence the bull broke through.

SHURTLEFF, J., dissenting.

Appeal by defendant from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed May 2, 1923.

JINKINS & JINKINS, for appellant.

ACTON, ACTON & SNYDER, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

Appellant's bull broke into appellee's inclosure,

gored one of appellee's mules therein so that it was necessary to cause its death by chloroforming it, and inflicting severe injuries upon another mule. Appellee brought suit and after much pleading a trial was had, resulting in a judgment for appellee against appellant for $200 and costs, from which judgment this appeal has been taken.

It is claimed by appellant that before a recovery could be had in this case it was necessary for appellee to aver and prove that the bull in question was an animal of vicious propensities and that appellant had knowledge of such fact. Whether or not it is necessary to aver and prove a scienter depends on the *locus in quo* of the injury. In 1 Ruling Case Law, sec. 36, p. 1092, it is said: "That it is necessary to prove knowledge, on the part of the owner of a domestic animal, of its vicious propensities, in an action for injuries done by the animal while in a place where it had a right to be, is well established. The view seems to be generally entertained, however, that the law dispenses with the necessity of proving knowledge on the part of the owner, of the savage propensities of a vicious beast, where an injury is inflicted by an animal while trespassing on another's land. In such a case the breaking and entering the close is the gist of the action, and the mischief or injury resulting therefrom to the person or property of the plaintiff is alleged and recovered on by way of aggravation of the trespass. Thus if a bull breaks into an inclosure of a neighbor, and there gores a horse to death, his owner is held liable in an action of trespass *quare clausum fregit,* in which the value of the horse is deemed to be the just measure of damages."

In 3 Corpus Juris, pp. 92, 94, the general rule is stated as follows:

"As to when the necessity for proving viciousness and scienter exists there is some confusion in the cases. It may be laid down as a general rule that the decision of the question depends upon whether the ani-

mal is rightfully or wrongfully in the place where it inflicts the injury complained of. It is not true in all cases, however, that scienter is necessary where the injury is inflicted by an animal in a place where it had a right to be. If the owner or keeper is guilty of negligence in handling the animal he is liable regardless of scienter.

"If domestic animals injure any person or property while wrongfully in the place where the injury is done, the owner is liable, although he had no notice that such animal was accustomed to do such wrong or mischief. In such case the ground of action is that the animal was wrongfully in the place where the injury was done, and it is not necessary to allege or prove any knowledge on the part of the owner that such animal had previously been vicious. Thus a person who allows his horses to be at large where they have no right to be, as on a sidewalk, or who permits his cattle to run in a highway in violation of a statute prohibiting them from running at large therein, is liable in damages for injuries committed by them while so running at large, without reference to the question of the animal's viciousness, and even though he did not know that they were in the highway at the time of the injury, unless their presence there is not due to his fault, or constitutes no breach of duty due from defendant to plaintiff, in which latter cases scienter must exist. * * * Where at the time of doing the mischief a domestic animal is a trespasser on the lands of plaintiff and the action is in trespass, recovery may be had for the mischief without proof of the scienter, the trespass being the gist of the action and the injury merely an aggravation of the damages. Likewise negligence need not be shown."

Appellee's mules were being pastured in appellee's stubble field which was separated from appellant's field, in which his bull was being pastured, by a wire fence. There is evidence tending to show that this fence had been agreed upon by appellee and appellant as a division fence of which appellee was to maintain the west half and appellant the east half.

Section 2, ch. 54, Rev. St. [Cahill's Ill. St. ch. 54, ¶ 2] provides that fences four and one-half feet high, consisting of rails, timber boards, stone, hedges, barbed wire, or whatever the fence viewers of the town shall consider equivalent thereto, shall be deemed legal and sufficient fences. According to the testimony produced by appellant, the east half of the fence answered the requirements of a good and sufficient fence while the west half was somewhat defective. According to appellee's testimony, the west half of the fence met the statutory requirements while the defects, if any, were in the east half.

Section 20, ch. 54, Rev. St. [Cahill's Ill. St. ch. 54, ¶ 20] provides: "If any horse, mule or ass, or any neat cattle, hogs or sheep, or other domestic animals, shall break into any person's inclosure, the fence being good and sufficient, the owner of such animal or animals shall be liable, in an action of trespass, to make good all damages to the owner or occupier of the inclosure."

It is claimed by appellant that this section of the statute was repealed by implication when the legislature enacted section 1, ch. 8, Rev. St. 1895 [Cahill's Ill. St. ch. 8, ¶ 1] and that therefore it can have no application to this case. Repeal of laws by implication is not favored and it is only when there is a clear repugnance between two laws and the provision of both cannot be carried into effect that the later law must prevail and the former is considered as repealed by implication. *Dingman v. People*, 51 Ill. 277; *Devine v. Board Com'rs Cook County*, 84 Ill. 590; *Pavey v. Utter*, 132 Ill. 489; *People v. Faherty*, 306 Ill. 119.

In *Town of Ottawa v. County of LaSalle*, 12 Ill. 339, it is said: "It is a maxim in the construction of statutes that the law does not favor a repeal by implication. The earliest statute continues in force, unless the two are clearly inconsistent with and repugnant to each other, or unless in the latest statute some ex-

press notice is taken of the former, plainly indicating an intention to repeal it. And where two acts are seemingly repugnant, they should, if possible, be so construed, that the later may not operate as a repeal of the former by implication.''

There is no repugnancy between the two acts in question. Section 1 of chapter 8 prohibits stock from running at large and is in no way repugnant to section 20 of the Fence Act which specifically provides that ''this section shall not be construed to require such fence, in order to maintain an action for injuries done by animals running at large contrary to law.''

As stated by appellant in his brief, the two main questions are whether or not the wire fence was a partition fence and through which end of the fence the bull entered, together with the question of the sufficiency of the fence. On each of these questions the evidence was conflicting and by no means conclusive. Weighing this evidence and determining these questions of fact were peculiarly the province of the jury, and their finding having been approved by the judge who saw and heard the witnesses, this court would not be justified on this record in disturbing their finding.

Complaint is made that the verdict was excessive. There was evidence amply supporting the amount of the verdict.

Appellant urges as ground for reversal that there is a variance between the allegations of the declaration and the evidence in that the declaration in both counts alleges ''that from said injuries the mule then and there did die,'' while the proof was that the veterinary killed the mule with chloroform. It is unquestionably the law that a party cannot state his case one way in the declaration and recover upon a different case made by the evidence. The allegations and proof must agree. However, in this case there was no variance. The evidence shows that after being gored by the bull the mule was down on its side by the side of the hedge; that a considerable portion of

the smaller intestines were out, torn in two; that the mule was unable to get up. The veterinary who chloroformed the mule testified that it was impossible to save the mule. Under these circumstances while the chloroform was the immediate cause of death, the injury received was a direct proximate cause of its death and the evidence sustained the allegations of the declaration.

Appellee contends that the court erred in instructing the jury as follows, at the request of appellee:

"You are instructed that if the plaintiff has proven by the preponderance of all the evidence in this case that he was the owner of the mules in question and that said mules were on land belonging to the plaintiff and that the defendant was the owner of the bull in question and that the said bull was on land belonging to defendant, which adjoined the land of the plaintiff, and that there was a fence between said lands and that said fence consisted of woven wire and barbed wire and was four and one-half feet high and in good repair, and that said bull broke through said fence and injured one mule and killed one mule belonging to the plaintiff on the land of the plaintiff, then under the law you should find a verdict for the plaintiff; and in such state of proof it would be immaterial whether or not said fence was a partition fence by agreement of the parties and it would also be immaterial as to whether or not the plaintiff and defendant had each agreed to keep up a certain portion of said fence and it would also be immaterial in such state of the proof as to which end of the fence the bull broke through."

This instruction is in accord with the statute and the authorities cited in this opinion. The trespass on appellee's close was the gist of the action. The instructions considered as a series were most favorable to the appellant.

Other errors are assigned but we find no reversible error in the record. The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SHURTLEFF dissenting: I cannot agree with the conclusion arrived at by the majority opinion of this court. The parties were adjoining landowners, having inclosed fields for the pasturing of stock. There was no evidence that the bull had any vicious tendencies or was known to be "breachy." There was testimony tending to show that the fence dividing the two pastures was a partition or division fence, and the case was tried by both parties on that theory. The amount of the judgment is not large, but the construction given to section 20, ch. 54, Rev. St. [Cahill's Ill. St. ch. 54, ¶ 20] and the instruction given for appellee, cited in the majority opinion, are so at variance with the long and unbroken line of decisions, not only of this court but of the Supreme Court of this State, that I cannot concur in the same.

Some confusion may have been caused by appellant's argument that section 20 of chapter 54 (the Fence Law) has been repealed by later acts or by implication. This is not the exact construction to be given to section 20.

In the early history of the State, owing to the large amount of vacant and prairie land lying unoccupied and unused, it was held in *Seeley v. Peters*, 10 Ill. (5 Gilm.) 130, and other cases, that the principles of the common law as to stock running at large were not adaptable to this new, unsettled condition, and that the common law was not in force and that stock could lawfully run at large, and that it was the duty of the crop raiser to construct a lawful fence to protect his crops from stock running at large. Under the common law, the owner of stock was required to inclose his stock and was liable for any damages done by his stock, while at large, or committing a trespass and it was the same as a trespass by the owner. Later, and as the State became more densely populated, and, "by the statute now in force (chapter 8, Revised Statutes, passed in 1874, which is, in effect, sections 1 and 2 of the Act of 1871-2 rewritten), a radical change was

made.'' *Bulpit v. Matthews,* 145 Ill. 352. It was made unlawful for stock to run at large and section 1 of the Act of 1874 imposed a penalty upon any person suffering or permitting domestic animals to run at large within this State, except when authorized as in that act provided. Section 2 provided for submitting the question of permitting animals to run at large to a vote of the electors of the county. Section 3 related to the form of the ballot, etc. *Bulpit v. Matthews, supra,* page 353. This had the effect of placing the subject of the control of domestic animals under the common law in all places, except in counties which, by vote, permitted such domestic animals to run at large. *Bulpit v. Matthews, supra.* Chapter 8 of the Revised Statutes has since been amended so that at the present time it is unlawful in any case for domestic animals to run at large, the right of counties, by vote, to become exempt from such law having been repealed.

As to section 20, ch. 54 (the Fence Law) of Illinois, cited in the majority opinion, the right to bring a suit for damages, if any domestic animal shall break into any person's inclosure, ''the fence being good and sufficient, the owner of such animal or animals shall be liable, in an action of trespass, to make good all damages,'' etc. This section was passed when it was lawful for domestic animals to run at large and it may be conceded that it is still the law of Illinois and applies to all *"animals running at large"* but does not apply in this case, as I think the Supreme Court has made plain.

In *McCormick v. Tate,* 20 Ill. 334, the court held on page 338:

''By the common law, every man was bound to keep his cattle on his own land, or respond in damages for their trespasses. And it was one of its rules, that no man is bound to fence his close against an adjoining field, but every man is bound to keep his cattle in his own field at his peril. *Rust v. Low,* 6 Mass. 91.  *  *  * But this legal obligation might be changed by prescrip-

tion and by covenant. And in this State it can be done under the statute regulating partition fences. If parties desire to avoid the common-law duty in cases of adjoining fields, they may do so under our statute by compelling contribution for the erection and maintenance of such a fence. This statute does not abridge individual rights, but permits any one to fence his land in his own way, *or when* a fence has become a division fence, compels both parties to contribute equally to its support, which is eminently just.''

In *Osburn v. Adams*, 70 Ill. 291, a case where there was a division or partition fence, on a suit brought to recover damages for crops destroyed by stock, the appellee recovered judgment. In this case the court instructed the jury: ''That, if they found the fence, appellee was bound to keep in repair, was defective and the animals went over such defective fence, and did the damage, appellee could not recover.''

The court held that the issue was fairly presented. It will be seen that the whole subject of partition fences was a matter of statutory enactment in Illinois as early as 1858 and changed and modified the common-law rule and section 20 of chapter 54, Rev. St. as to domestic animals breaking into an inclosure, where there is a division or partition fence. The whole subject is discussed in *D'Arcy v. Miller*, 86 Ill. 102. On page 104, the court reiterates what it had said in *McCormick v. Tate, supra,* and adds:

''If, then, the line fence was a partition fence, before appellee could recover damages for crops destroyed by appellant's stock, the law required him to prove that appellant's stock came through that part of the partition fence belonging to appellant. Or if appellant's stock passed through the line fence belonging to each party, then it would devolve upon appellee to prove the amount of damages occasioned by the stock passing through appellant's portion of the fence, in order to recover for that part of the damages sustained. *After a partition fence was established between the parties' lands, the common law,*

*which required adjoining owners to each keep his stock upon his own land, was no longer in force.* Appellee was, therefore, bound to show, before a recovery could be had, that the damages sustained were not occasioned by his own negligence; in other words, that the stock that damaged the crops did not pass through appellee's own defective fence."

It is plainly seen that in cases where a partition fence has been agreed upon, the rule of the common law does not apply, and neither does section 20 of chapter 54 apply, because the parties have agreed among themselves or covenanted to maintain a legal or lawful fence, and each is only liable for his own negligence in that behalf. Section 20, *supra,* is still in force as to stock running at large.

From these holdings by the Supreme Court of this State, it has been held, by an unbroken line of decisions in the Appellate Courts and is understood and followed by the bench and bar of this State, that the law in this respect is:

"In order to recover for trespasses occasioned by stock passing through a division fence, certain portions of which are to be kept up by each proprietor, the injured party is required to show either that the stock passed through that portion of the fence which it was the duty of the other landowner to maintain, and which duty was omitted or neglected, or that the stock passed through his own portion of the fence at a point where such fence was good and sufficient to turn stock even to some extent unruly."

The latter situation, being upon the theory that the party injured has not been negligent, which makes the breach of defendant's animal a trespass chargeable to the owner of the animal. *Selover v. Osgood,* 52 Ill. App. 263; *Walters v. Stacey,* 122 Ill. App. 660; *Bohlen v. Whitehouse,* 159 Ill. App. 305; *Albright v. Bruner,* 14 Ill. App. 319; *McNeer v. Boone,* 52 Ill. App. 182.

All of which cases, except *Albright v. Bruner,* have been decided by this court.

In the light of these decisions, the instruction quoted

in the majority opinion, given to the jury, being a peremptory instruction, was clearly erroneous and did not state the law correctly. In the opinion of the writer, the very great preponderance of the evidence showed that there was a partition fence and that defendant's part of the fence was a good and lawful fence; and in this state of the proof the instruction was in effect a peremptory instruction to find a verdict for the plaintiff. There was no dispute but that defendant's bull went through or over the fence somewhere and committed the damage.

In the opinion of the writer, the preponderance of the evidence was very strongly in favor of the appellant and the verdict for appellee can only be accounted for by the giving of plaintiff's second instruction and the judgment should be reversed and remanded.