[Civ. No. 12101.   Second Appellate District, Division One.—December 17, 1940.]

EMMA BARTHOLOMAI, Appellant, v. THE OWL DRUG COMPANY (a Corporation) et al., Respondents.

Edward A. Penprase and B. W. Burkhead for Appellant.

Joe Crider, Jr., Elber H. Tilson, Jennings & Belcher, Stevens Fargo, Reginald I. Bauder and Wayne Veatch for Respondents.

YORK, P. J.—On October 23, 1935, appellant, while a patron of The Owl Drug Company at its store situate at Sixth and Broadway in Los Angeles, received severe injuries as the result of a fire which started in a false ceiling of said storeroom. This false ceiling was constructed of 2x12 inch Oregon pine planks laid side by side, and was erected to enable the respondent Drug Company to make certain alterations in the said storeroom and at the time permit it to conduct its business without interruption. Said false ceiling was erected about eight feet from the floor and completely covered the storeroom. Its upper side was unfinished wood without covering, and its under side was covered with heavy paper from which were suspended paper pennants advertising various articles of merchandise then being sold by the Drug Company. As part of the construction work the general contractor, Louis C. Dunn, Inc., Louis C. Dunn and Charles L. Dunn, contracted with respondent Soule Steel Company to furnish and install the necessary steel joists in the ceiling of the mezzanine floor immediately above the false ceiling, the steel company in turn employing respondent McDonald to do the welding incident thereto.

At about 3 o'clock in the afternoon of the day in question, respondent McDonald was using his welding apparatus in the welding of said joists and in doing so was standing on a scaffold made of 2x12 inch planks set on saw horses resting on the false floor, when he observed smoke coming up through the planks thereof at a distance of ten or twelve feet from the point where he was working. Immediately thereafter he saw a burst of flame which "covered the whole building in about a minute".

Appellant while making a purchase in the storeroom of the Owl Drug Company looked up and saw the fire just over her head about ten feet from the entrance of the Broadway side of the store; she attempted to get out that way, but "the flames came down so fast" she was unable to do so, whereupon she dropped everything and ran to the Sixth Street entrance, sustaining severe burns as she progressed. When she reached the door she felt the fresh air, but lost consciousness and remembered nothing more until she was placed in an ambulance and taken to a hospital.

At the trial appellant presented her evidence, but respondents declined to offer any testimony. After argument of counsel the cause was submitted for decision to the trial judge, who entered judgment that appellant take nothing and that respondents recover their costs. Appellant's motion for a new trial was thereafter denied, and she now prosecutes this appeal from the aforesaid judgment, contending (1) that the findings of the trial court are contrary to and not supported by the evidence; (2) that the court committed prejudicial error in excluding certain evidence and in declining her offer of proof with regard thereto; and (3) that the court erred in refusing to permit her to examine the witness Moore under section 2055 of the Code of Civil Procedure.

In support of her first contention, appellant argues that the "real question to be determined by this appeal is whether or not the findings of the trial court, and particularly finding No. 7, find support in the evidence presented"; all evidence before the court being undenied and uncontradicted.

Finding VII was to the effect that all the allegations contained in paragraph VII of plaintiff's first amended complaint are not true. Said paragraph VII of the said complaint reads as follows:

"That the defendants, and each of them, through their agents, servants and employees in the performance of the remodeling and repair work as hereinbefore alleged, caused to be constructed a false ceiling between the first and second floors of said building, which false ceiling was constructed of materials and substances highly inflammable in their nature. That on the 23rd day of October, 1935, the defendants, and each of them, with knowledge of the highly inflammable nature of the said false ceiling and its attendant fire hazard, through their agents, servants and employees, carelessly and negligently used an electric welding machine in the perform-

ance of said work, and as a direct and proximate result of negligence of the defendants, and each of them, as aforesaid, a fire occurred in said premises."

Appellant has excerpted from the bill of exceptions herein the following testimony which she claims clearly proved the allegations of paragraph VII of the amended complaint:

Frank Mittenzwei, a building inspector for the city of Los Angeles, testified: "The entire storeroom of the Owl Drug Store was covered with a wooden scaffolding made of two-inch planks constructed of Oregon pine planks. This scaffolding was eight feet from the floor. On the underside of the scaffolding building paper was tacked, and fastened to this ceiling were paper triangle pennants."

Respondent Lancell McDonald, who was operating the welding apparatus, testified: "The false floor was unfinished bare wood of two-inch planks. . . . I was welding immediately prior to observing the fire. In doing the welding I stood on a scaffold made of 2x12 inch planks set on saw horses which rested on the false floor. I was about ten or twelve feet from the spot where I first observed the fire. I first saw smoke underneath the plank, later I saw light . . . through the crack of the planks. Immediately after observing the smoke and light there was just a burst of flames. . . . It covered the whole building in about a minute. There was no one at the point where I saw the smoke and light at the time I saw it. I saw no one smoking at that point. There were no electric wires that I know of in the area where I was working."

Captain Paul Wolfe of the fire department, assigned to the Bureau of Fire Investigation, testified: " '2x12' Oregon pine planks will ignite in the neighborhood of 180° to 220° F. . . . heavy building paper will ignite in the neighborhood of 300° F. I am familiar with the type of paper used in the Owl Drug Store under the false ceiling, and it was a soft type of paper and it would ignite around 140° F. . . . The paper pennants . . . would ignite at around 150° F.".

Appellant also calls attention to the following evidence as to the occurrence and cause of the fire, to wit: That of respondent McDonald, who testified that "The smoke when I first saw it was from ten to twelve feet from me. It looked like—well, smoldering and black smoke was just drifting along beneath the planks. You could see it through the planks. . . . The arc was nine or ten feet from the false floor. We make some sparks when we weld. They drop ap-

proximately straight down . . . They are white hot scalings. Sometimes there is a little white metal that falls away, the amount of which depends on the amount of heat used.''

The testimony of James W. McCartney, an expert welder, to wit : ''The melting point in welding varies generally from 2900° to 3200° F. The heat of the electrode in electric arc welding is about 7200° F. When the electrode comes in contact with the parent metal it becomes molten in the heat of the arc. The molten metal is generally known as 'puddle' or pool of molten metal. The temperature of the puddle is somewhat higher than the melting point of the metal. It is superheated''.

It is appellant's theory that this evidence shows as a matter of law that the ''defendants in using or permitting to be used the fire-producing apparatus without any precautions being taken for the safety of those who might be in the store were guilty of the grossest negligence.''

The mere fact that the fire occurred is insufficient to raise an inference of negligence on the part of respondents. No evidence was produced which tended to prove that the false ceiling was erected by or under the direction of respondents, or that they had knowledge of the inflammable nature of the planks with which it was constructed. It was proved that the welding apparatus was being operated by respondent McDonald on a platform above the ceiling at the time the fire broke out, this witness describing the beginning of the fire as a rising of smoke through and between the planks which comprised this false ceiling, but there was no evidence tending to prove that he operated the welding apparatus in a negligent manner.

Before respondent could be held to answer in damages for the injuries suffered by appellant, it was incumbent upon the latter to assume the burden of proof and show by a preponderance of the evidence that the negligence of respondents was the proximate cause of the fire. A judgment cannot be based upon guesses or conjectures. (*Reese* v. *Smith,* 9 Cal. (2d) 324, 328 [70 Pac. (2d) 933], citing *Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363 [64 Pac. 480].)

Because of the lack of evidence upon the main issue presented by the pleadings herein, the court's finding in favor of respondents was proper.

With respect to the conversations of the witness Mize, a member of the Fire Department, with Percy Moore, an em-

ployee of respondent Steel Company, who was partly in charge of the welding job, which conversations were excluded, and properly so, as being hearsay as to the said Steel Company, it should be noted that the witness Mize did not arrive at the scene of the fire in question until ''flames were shooting out of the ground floor approximately half way across the street''. The conversation sought to be introduced was one relating to an earlier fire which occurred ''on the other false ceiling'' at which time Mr. Moore told the witness Mize that ''it was caused by the welding which was then being done—sparks from the welder the night before''.

■ The offer of proof did not disclose that the conditions under which the earlier fire occurred were similar to those under which the fire of October 23d occurred. For all that the offer shows, the other fire may have been caused by entirely different circumstances, and therefore there was no error on the part of the trial court in its ruling with regard thereto. Furthermore, the witness Moore when questioned by appellant as to whether or not a small fire occurred there on the night of October 22d, replied, ''I don't remember.''

■ There is no merit in appellant's final point, for the reason that the witness Moore did not fall within the category of persons who may be examined under section 2055 of the Code of Civil Procedure.

For the reasons stated, the judgment is affirmed.

Doran, J., concurred.

WHITE, J., Dissenting.—I dissent,—except as to respondent Owl Drug Company. As was said in *Arundell* v. *American Oil Fields Co.*, 31 Cal. App. 218, 235 [160 Pac. 159], negligence, like any other fact, may be inferred from a preponderance of the evidence, whether it be circumstantial or direct, and the plaintiff is not required to prove his case beyond a reasonable doubt. It seems to me that the conduct of the general contractor, the subcontractor and the latter's agent and employee in permitting and doing welding in a downtown building situated in the heart of a metropolitan city under the conditions shown by the record in this case, clearly constitutes negligence, for after all, negligence is but the failure to observe for the protection of the interests of another person, that degree of care, protection and vigilance which the circumstances justly demand. And certainly the

circumstances as reflected in the main opinion in the instant case demanded that precautions be taken against fire, when, as the record reveals, the heat and sparks from the welding apparatus were liable to ignite the flimsy paper attached to the false ceiling.

True, there was no witness who could testify at the trial that a particular spark from, or the heat produced by, the welding apparatus started the fire, but since no plausible explanation was offered for the origin of the fire, and having in mind that it is not necessary in the trial of a civil case that the circumstances should establish the negligence of the defendant as the proximate cause of the injury with such absolute certainty as to exclude every other conclusion, it seems to me irrefutable that the only conclusion to be drawn is that the conduct of the parties who were responsible for allowing this highly dangerous welding to be done without taking precautions to prevent the ignition of the inflammable material in proximity to it and to prevent injury to customers in the store, was negligence. As was said in *Orander* v. *Stafford*, 98 W. Va. 499 [127 S. E. 330, 42 A. L. R. 780, 782], "The general rule is that persons in the lawful use of fire must exercise ordinary care to prevent it from injuring others. What is ordinary care and prudence depends on the circumstances of the particular case. The greater the danger of communicating fire to the property of others, the more the precautions and the greater the vigilance necessary to constitute such care. Reasonable care and negligence are relative terms, and depend upon the circumstances and exigencies of the particular case. The greater the danger to others from failure to exercise care, the greater is the degree of care required . . . An ordinary oil stove might not be considered dangerous when used in a residence, but no one would consider it a safe appliance for heating a barn stored with hay, fodder and other dry and very combustible materials." By the same token, welding apparatus might not be considered dangerous when in operation upon a public street or in the open air, but certainly no one is warranted in permitting such operations under the circumstances present in the instant case.

As to defendant Owl Drug Company, while it may be that as operator of the business conducted in the building it should have known of the dangers attendant upon the hazardous work being done therein, yet I am inclined to the belief that it should be exonerated because there is no claim that it did

not use reasonable care and prudence in the selection of a general contractor to do the work, or if the Owl Realty Company, as owner of the building, selected such general contractor, that it also did not use reasonable care therein.

As to the other defendants, it seems to me that in view of their negligence in doing work fraught with danger of fire under the circumstances shown, they are not entitled to be exonerated of negligence, and the judgment in their favor should not be permitted to stand.

A petition for a rehearing was denied on January 13, 1941. White, J., voted for a rehearing.

Appellant's petition for a hearing by the Supreme Court was denied on February 13, 1941. Traynor, J., voted for a hearing.