## DEFENSE SUPPLIES CORPORATION v. LAWRENCE WAREHOUSE CO. et al.
### No. 23171–G.

District Court, N. D. California, S. D.
Jan. 9, 1946.

18

R. L. Miller, David E. Lombardi, and Brobeck, Phleger & Harrison, all of San Francisco, Cal., for plaintiff.

W. F. Williamson, W. R. Wallace, Jr., W. R. Ray, and Williamson & Wallace, all of San Francisco, Cal., for defendant Lawrence Warehouse Co.

A. J. Getz, of Los Angeles, Cal., for defendant Capitol Chevrolet Co.

Louis J. Glicksberg, of San Francisco, Cal., for defendant Clyde W. Henry.

Albert H. Gommo, Jr., of San Francisco, Cal., for defendant V. J. McGrew.

GOODMAN, District Judge.

In 1943, plaintiff, a corporate agency of the United States created pursuant to the authority contained in Section 5d of the Reconstruction Finance Corporation Act, as amended by Act of June 25, 1940, 15 U.S.C.A. § 606b, initiated and prosecuted a plan known as the "Idle Tire Purchase Plan." Its purpose was to create a stock pile of used and spare automobile tires in aid of the national defense. On March 1, 1943, having accumulated a quantity of tires and tubes in Sacramento, California, plaintiff contracted with defendant Lawrence Warehouse Company, a corporation engaged in the warehousing business, to store and safekeep the same. Defendant, Lawrence Warehouse Company, with the consent and approval of plaintiff, in turn contracted with defendant Capitol Chevrolet Company to warehouse the tires and

tubes as its agent. Previously defendant Capitol Chevrolet Company had leased from defendant Clyde W. Henry a building formerly used as an ice skating rink, in the outskirts of Sacramento, California, and the tires and tubes were stored therein. On April 9, 1943, defendant V. J. McGrew, a well drilling contractor, who was elsewhere drilling a well for defendant Henry, entered the building where the tires and tubes were stored and by use of an acetylene torch proceeded to cut up a steel tank in the engine room of the warehouse. In the course of his work, a fire started in the engine room and the building and all the tires and tubes were destroyed by fire.

By this suit plaintiff seeks to recover the value of the tubes and tires destroyed. The question presented is whether any or all or which of defendants is liable for the loss.

Defendant Lawrence Warehouse Company cross-complained against defendants Capitol Chevrolet Company and Henry wherein it sought judgment against the named cross-defendants in the event of an award against it in favor of plaintiff. Likewise defendant Capitol Chevrolet Company cross-complained against defendant Henry seeking like relief against him. After plaintiff concluded its evidence, defendants moved to dismiss and for judgment in their favor. After argument it was stipulated, (the defendants not desiring to submit any evidence on their behalf) that the cause might be submitted upon the motions to dismiss. No evidence was presented in support of the cross-complaints and the issues there raised are not now before the court for adjudication.

The Case Against Defendant McGrew.

The evidence discloses the following facts as to the starting of the fire: The engine room, which was approximately 25 by 40 feet in size, although a separate room with three wooden walls, was part of the main building. In the engine room was a steel tank resting on wooden blocks. McGrew did not examine the floor. There is evidence of some undescribed "dark" substance on the floor beneath the tank. While McGrew was us-

ing the torch to cut the tank, the fire started. At the time, a fairly strong northwest wind was blowing and the door on the west side of the room as well as the windows of the room were open. There is evidence of admission by McGrew that "it looked as if the fire started where I was cutting the tank" (Tr. 177).

It is contended by defendant McGrew that the evidence does not justify a finding that his use of the torch started the fire and that such conclusion is purely conjectural. I am fully convinced by the evidence that McGrew caused the fire by his use of the torch and that he failed to take reasonable precautionary measures against fire and neglected to properly inspect the premises before commencing and while performing his work. I do not feel bound to follow the cited case of Bartholomai v. Owl Drug Co., 42 Cal.App.2d 38, 108 P. 2d 36, inasmuch as it fails to recognize the existence of a duty upon the part of a person using an instrumentality capable of igniting combustible material to ascertain the presence of such material nearby and to safeguard against its ignition. The case of Wilson v. Southern Pacific R. Co., 62 Cal. 164 appears to me to be in point and persuasive against defendant's contention.

The Case Against Defendant Henry.

It is sought to fix liability upon the landlord Henry upon the following grounds: (1) That McGrew was at the time of the fire acting as his agent; (2) that, conceding an independent contract relationship between the two men, the work being done on the premises was inherently dangerous and therefore the duty of exercising due care could not be delegated to McGrew; hence Henry is liable as if McGrew were his agent; (3) that Henry had an independent non-delegable duty as landlord to use due care to avoid injury to the property of a tenant or of those privy to the tenant, and is liable for injuries resulting from a violation of such duty.

The contention that McGrew was Henry's agent is not sustained by the evidence. McGrew was a contractor. He agreed to drill a well for Henry, supplying his time and the necessary labor and equipment at an hourly rate of compensation.

Henry paid for the material which was supplied by McGrew. Henry had no manner of control over McGrew's operations. It is true that Henry gave permission to McGrew to use the steel in the tank (which belonged to Henry) in the well drilling operation. It is also true that Henry, through an employee, obtained the necessary authority for McGrew to enter the premises to get the steel in the tank. No instructions or directions were given or caused to be given by Henry to McGrew as to the manner or mode of obtaining the steel. In effect what he did was to give permission to McGrew to use the tank, if it was serviceable in drilling the well, and to obtain authority for him to go upon the premises. Therefore, while a benefit accrued to Henry in that the material was useful in completing the well, likewise McGrew was benefited for it enabled him to proceed under his contract. Judged by well and long established criteria, the relationship between the two men rested upon independent contract and not upon agency. Hillen v. Industrial Acc. Comm., 199 Cal. 577, 250 P. 570; § 8(b), California Workmen's Compensation Act, § 3353, California Labor Code. See Teller v. Bay & River Dredging Co. 151 Cal. 209, 90 P. 942, 12 L.R.A.,N.S., 267, 12 Ann. Cas. 779 for a strongly analogous case on the facts. Id. Eads v. St. Louis I. M. & S. R. Co., 184 Mo.App. 1, 167 S.W. 577; Klee v. United States, 9 Cir., 53 F.2d 58.

█ The contention that an inherently dangerous procedure in the execution of the independent contract fastened liability upon Henry for the negligence of the contractor McGrew is likewise not substantiated in the record. It does not appear that Henry in fact knew of the contemplated method of procedure of McGrew or, by reason of any custom theretofore existing in their relationship, should have known thereof. Absent these factors, the basis of liability is not present. Seattle Lighting Co. v. Hawley, 54 Wash. 137, 103 P. 6. See cases collected in Besner v. Central Trust Co., 230 N.Y. 357, 130 N.E. 577, 23 A.L.R. 1084.

█ Likewise the claim that landlord Henry is liable for violation of his non-delegable duty to use due care for the protection of his tenants' property has no evidentiary basis. This contention fails because the facts disclosed that Henry was not acting in his capacity as landlord in obtaining permission for McGrew to enter the premises to get the steel, but rather in furtherance of an entirely separate enterprise, co-incidental it is true, but completely disassociated from the landlord tenant relationship. Hence the duty which gives rise to the liability was non-existent. Firestone v. Schoenberger, 28 Ohio N.P. 436.

I conclude that no legal basis for liability of defendant Henry is here present.

### The Case Against Capitol Chevrolet Company and Lawrence Warehouse Company.

The nature and extent of the liability of Lawrence Warehouse Company is fixed in paragraph 11 of its contract with plaintiff (Plaintiff's Ex. 1) which provides:

"Your general responsibility for the care and protection of the tires will be limited to such care as is required by laws governing warehouses in your state and to the exercise of ordinary care on your part."

█ If Capitol Chevrolet Company, the agent of Lawrence Warehouse Company (Plaintiff's Ex. 11), failed to use reasonable care for the preservation of plaintiff's goods whereby the damage was caused or contributed to, Lawrence Warehouse Company is liable to plaintiff. California Warehouse Receipts Act, Sec. 21, Gen. Laws, Act 9059; California Civil Code, Sec. 1858e. Since the cause itself was submitted after the conclusion of plaintiff's evidence, it is to that evidence the court must look in order to determine liability.

█ Plaintiff contends that a prima facie case of liability is established against the warehousemen by proof of the bailment plus loss due to fire in the bailee's premises. Contrariwise, Lawrence Warehouse Company asserts the legal insufficiency of such a showing claiming that in this action, predicated and tried, as it was, on the theory of negligence, the burden is on the plaintiff to show that the ware-

housemen's negligence caused or contributed *to cause the fire*. But the liability of the warehousemen here does not depend at all upon the quantum of evidence required to establish a prima facie case of liability against a bailee for loss by fire of goods intrusted to its care, an issue as to which both sides have extensively labored with the aid of many citations.[1] The liability of the warehousemen here depends upon the answer to the following query:

Does it appear, from a preponderance of the evidence, that defendant warehousemen failed to take reasonable precautions for the prevention of fire and for its extinguishment after it occurred, thereby causing or contributing to the plaintiff's loss?

That the foregoing query is predicated upon a proper legal standard is substantiated by respectable precedents. Lake Union Drydock & Machine Works v. United States, 9 Cir., 79 F.2d 802; Dieterle v. Bekin, 143 Cal. 683, 687, 77 P. 664; Runkle v. Southern Pacific Milling Co., 184 Cal. 714, 195 P. 398, 16 A.L.R. 275; England v. Lyon Fireproof Storage Co., 94 Cal.App. 562, 271 P. 532.

█ In my opinion, the evidence fully justifies the inference[2] that Capitol Chevrolet Company failed to take reasonable precautions which proximately contributed to the fire loss. Upon the defendant warehousemen rested the duty of anticipating fire hazards and maintaining proper and preventive lookouts. This is patently obvious when, as here, they stored valuable inflammable material in a wooden structure in a semi-rural area, outside the city limits and too far beyond speedy access of fire fighting equipment.

Furthermore the evidence discloses that Capitol Chevrolet Company failed to have anyone at the warehouse premises to keep a lookout for possible fires or fire hazards and to do whatever was reasonably required to guard against such occurrences. No inquiry was made, when McGrew was permitted to enter the premises, as to his intentions and mode of procedure. Nor did Capitol Chevrolet Company ascertain, after McGrew's entrance, what he was actually doing, although at the time of the fire, he had already been using the torch the day previous and during the morning of the day of the fire. This despite the fact that his torch and welding equipment were in plain sight outside the engine room. Also it appears that there was no fire fighting equipment available at the premises with which a fire, such as the one McGrew started, could have been combated.

█ The warehousemen are not relieved of the duty to exercise due care for the prevention of fires, upon the ground, as urged, that they could not reasonably have anticipated the acts of McGrew. At best, McGrew's acts were a concurring cause and cannot relieve the warehousemen of liability so long as their own negligence contributed to the loss or damage. Taylor v. Oakland Scavenger Co., 17 Cal.2d 594, 602, 110 P.2d 1044.

█ It is contended that Lawrence Warehouse Company stands acquitted of liability because the plaintiff inspected and approved the use of the premises as a warehouse, approved the agency contract with Capitol Chevrolet Company, designated the persons, including Henry, to be allowed access to the premises and selected and employed an independent detective agency to provide a 24 hour armed guard service.[3] But by none of the foregoing acts was Lawrence Warehouse Company absolved of its legal and contractual obligation as warehouseman to protect plain-

---

[1] The so-called "prima facie" rule does not prevail in this circuit upon motion to dismiss in non jury cases after conclusion of plaintiff's evidence. The adjudication of the court in such a case is upon the merits after weighing the evidence according to the appropriate standards. Rule 41(b) Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Barr v. Equitable Life Assur. Soc., 9 Cir., 149 F.2d 634. See also Comment in 9 F.Rules Service, p. 37.

[2] Direct and positive evidence is not prerequisite in this kind of case. See Wilson v. Southern Pacific Co., supra.

[3] The evidence indicates that the armed guard service was purely an additional and independent protective activity to prevent pilferage of the tires.

tiff's property from risk of loss by fire. Nor was Lawrence Warehouse Company relieved of its duty by plaintiff's approval or selection of Capitol Chevrolet Company as agent of Lawrence Warehouse Company for the latter was under no compulsion to contract as it did with plaintiff. Having done so, it is bound thereby.

█ There remains to be determined whether there is direct liability of Capitol Chevrolet Company to plaintiff. It cannot be disputed that Capitol Chevrolet Company accepted the tires for storage. Thereby it became a bailee for hire for the benefit of plaintiff. And there then rested upon it the legal duty toward the plaintiff to use due care for the preservation of plaintiff's property. California Civil Code, § 1814; Lough v. John Davis & Co., 30 Wash. 204, 70 P. 491, 59 L.R.A. 802, 94 Am.St.Rep. 848; Emery & Co. v. American Refrigerator Transit Co., 194 Iowa 926, 189 N.W. 824; Orcutt v. Century Building Co., 201 Mo. 424, 99 S.W. 1062, 8 L.R.A.,N.S., 929; Franklin v. May Department Stores, D.C., 25 F.Supp. 735.

Capitol Chevrolet Company is not excused because its principal is liable, for it is its statutory and common law duty as well as its contract obligation which subjects it to liability. California Civil Code, Sections 1814, 1851, 1852. Mayer v. Thompson Hutchinson Bldg. Co., 104 Ala. 611, 16 So. 620, 28 L.R.A. 433, 53 Am.St. Rep. 88.

## The Amount of the Loss.

█ The amount of damage alleged by plaintiff is $76,000.00. The basis upon which its calculation of the value of the graded tires and tubes destroyed is made— namely, average cost, not of the destroyed graded tires and tubes, but of all such tires and tubes collected by plaintiff in Northern California—I find to be speculative and therefore legally improper. Muldrow v. Samuel Norris, 2 Cal. 74, 56 Am.Dec. 313.

█ However mere uncertainty in amount is not an obstacle to the allowance of damages. In the case of uncertainty, the most reasonable basis within the boundaries of possibility should be formulated. Pacific Steam Whaling Co. v. Alaska Packers' Association, 138 Cal. 632, 72 P. 161; Hanlon D. & S. Co. v. Southern Pac. Co., 92 Cal.App. 230, 235, 268 P. 385; Story Parchment Co. v. Paterson, 282 U. S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Rilovich v. Raymond, 20 Cal.App.2d 630, 67 P.2d 1062.

The testimony of Alfred D. McClellan (Tr. 14) and the data contained in plaintiff's Exhibti #3 show the following to be the number and classification of the tires and tubes destroyed:

| | Quantity | | Value |
|---|---|---|---|
| Scrap tires | 13 412 @ | .20 each | 2 682 40 |
| Graded tires | 14 189 @ | 2.75 each | 39 019 75 |
| Graded tubes | 50 @ | 1.50 each | 75 00 |
| Scrap tubes | 1 800 | .11 each | 198 00 |
| | | Total | $41 975 15 |

█ The fair value, I have set out opposite the respective items. The manner of arriving at the values so fixed is set out in the margin.[4]

---

[4] *Graded Tires.*
The record (Tr. 22; Plaintiff's Exhibit #4, Grade 4) shows that the lowest OPA price for graded tires was $2.75 per tire. (By plaintiff's unacceptable theory of average cost a value of $3.48 per tire was claimed. (Tr. 23)) The price of $2.75 does not in fact represent the lowest price paid by plaintiff for any graded tire, inasmuch as there was deducted from the OPA price on graded used tires 90¢ for each vulcanized spot repair needed and $1.70 for each reinforcement or sectional repair needed. (Plaintiff's Exhibit #4, Grade 4.) Since it is not unreasonable to assume that tire owners turned in under the "Idle Tire Purchase Plan" their poorest tires, many of such graded used tires must have been purchased by plaintiff at less than $2.75, thus serving to offset to some degree other tires purchased for more than $2.75. These factors would in my opinion reasonably tend to equalize the difference in price to such an extent that a value of $2.75 per tire may be fixed as a fair and reasonable value of the graded tires destroyed.
*Scrap Tires.*
No difficulty presents itself as to scrap tires, since plaintiff paid 20¢ each for all tires of this kind.
*Graded Tubes.*
Likewise appraisement of value here is free of difficulty for the reason that the lowest OPA price for a sound or repaired

Judgment will enter in favor of plaintiff against defendants Lawrence Warehouse Company, Capitol Chevrolet Company and V. J. McGrew for $41,975.15 and costs and in favor of defendant Henry and against plaintiff for costs. Findings will be submitted pursuant to the rules. The court will retain jurisdiction to determine the issues of the cross-actions, if the parties therein concerned determine to pursue the same.

Dated: January 9, 1946.

---

used tube was $1.50. (Plaintiff's Exhibit #4, Table VI). Coincidentally this is average cost per plaintiff's theory.

*Scrap Tubes.*

There is evidence neither of any OPA price for scrap tubes nor of the price paid by plaintiff, but plaintiff claims a value of 20¢ each. Since *graded* tubes appear to carry a value of 55% of the value of *graded* tires, it is fair and reasonable to conclude that a similar ratio of value obtained in the case of *scrap* tires and tubes. Consequently the value of the scrap tubes is fixed at 11¢ each.