CAPITOL CHEVROLET COMPANY, a
corporation, Appellant,

v.

LAWRENCE WAREHOUSE COMPANY,
a corporation, Appellee.

James A. KENYON, Adams Service Co.,
a corporation, F. Norman Phelps and
Alice Phelps, Appellants,

v.

LAWRENCE WAREHOUSE COMPANY,
a corporation, Appellee.

No. 13840.

United States Court of Appeals
Ninth Circuit.

Nov. 1, 1955.

Rehearing Denied Dec. 12, 1955.

Morrison, Hohfeld, Foerster, Shuman & Clark, Herbert W. Clark, Richard J. Archer, San Francisco, Cal., Dempsey, Thayer, Deibert & Kumler, James B. Isaacs, Los Angeles, Cal., for appellants.

Wallace, Garrison, Norton & Ray, W. R. Wallace, Jr., Maynard Garrison, John R. Pascoe, San Francisco, Cal., for appellee.

Before HEALY, POPE, and CHAMBERS, Circuit Judges.

HEALY, Circuit Judge.

This appeal presents the complex aftermath of litigation in which Defense Supplies Corporation sought to recover damages from Lawrence Warehouse Company, Capitol Chevrolet Company, and two individuals, McGrew and Henry, for the negligent destruction by fire of tires stored in a warehouse. Trial to the court in that litigation resulted in a judgment in favor of Defense Supplies against all defendants save Henry. D.C., 67 F. Supp. 16. The decision was affirmed by this court. Lawrence Warehouse Co. v. Defense Supplies Corporation, 164 F.2d 773. The judgment was afterwards ordered vacated on technical grounds, 168 F.2d 199, but was ultimately reinstated by the Supreme Court, 1949, 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931, which held that the judgment still persisted and could be enforced on suit by the Reconstruction Finance Corporation, to which the assets and rights of Defense Supplies had been transferred by act of Congress. Thereupon Reconstruction Finance sued on the judgment, and on November 20, 1951, the district court granted summary judgment in its favor. Since the history of the earlier litigation is to be found in the reports cited, it is unnecessary at the moment to expand the story further.

In the district court the original suit bore the number 23171. In the subsequent action on the judgment, brought by RFC, the complaint was given the number 30473. It will be useful to bear these numbers in mind. Coincidentally with the filing of its answer in No. 23171 Lawrence interposed a cross-claim against Capitol Chevrolet Company and Henry, asserting its right to recover over against them in event Lawrence were held liable to Defense Supplies. Capitol Chevrolet Company answered the cross-claim, denying liability to Lawrence, and it interposed a cross-claim of its own against Henry.

The case then proceeded to trial. The contract between Defense Supplies and Lawrence for the warehousing of the former's tires, the contract and indem-

nity agreement between Lawrence and its agent Capitol Chevrolet Company for the furnishing by the latter of storage space, and other documentary evidence pertaining to Defense Supplies' claim of right to recover for the loss, were introduced in evidence. Witnesses were called by Defense Supplies to testify to the circumstances under which the warehouse and its contents were consumed. At the close of Defense Supplies' presentation all the defendants rested their defense on a motion for judgment in their favor, which motion the court denied except as to Henry. In ordering judgment against Lawrence, Chevrolet Company and Mc-Grew the court, at the request of all counsel, specifically retained jurisdiction to determine at a later time the issues in the several cross-claims.

■ It may be well at this point to say that the contract between Defense Supplies and Lawrence limited the latter's responsibility for the care and protection of the tires to the ordinary care of warehousemen required by California law. The agency agreement between Lawrence and Capitol, above referred to, provided among other things that Capitol was "to store and safeguard the storage of such tires and tubes as are received by Agent" and "to indemnify the Principal against loss or damage resulting from the failure on the part of the Agent to perform any of the duties or obligations above set forth." (There is some argument by appellants in the appeal presently before us to the effect that the latter agreement should be deemed vitiated because of a subsequent arrangement between the parties for the removal of the tires to a building known as the Ice Palace, where the fire occurred. This building was rented by Capitol from Henry pursuant to the mutual arrangement. We find in this arrangement and in the attendant circumstances no grounds for believing that Capitol's agreement was not intended thereafter to remain in full force and effect.)

When Reconstruction Finance brought its suit (No. 30473) to recover on De-

fense Supplies' judgment against Capitol, Lawrence and McGrew, it named as defendants also certain successor interests of Capitol, including appellant James A. Kenyon, Capitol having been dissolved in the course of the litigation. Lawrence filed a cross-claim against Capitol and its successors. As already indicated, RFC moved for summary judgment, and a separate judgment was entered by the court in its favor against Lawrence, McGrew and Capitol Chevrolet Company. Some ten days later Lawrence paid this judgment in full. In entering the judgment the court stated that the entry "shall be without prejudice to the further prosecution by cross-claimant Lawrence Warehouse Company, of its cross-claim against cross-defendants Capitol Chevrolet Company, James A. Kenyon, and Capitol Chevrolet Co., or any of them."

Subsequently Lawrence was permitted to amend its cross-claim to join additional successor interests of Capitol; and the court entered its order consolidating for trial the cross-claims of Lawrence both in No. 23171 and No. 30473. The additional parties impleaded by Lawrence were Adams Service Co., F. Norman Phelps and Alice Phelps, all of whom are appellants here.

At this juncture it is essential to state who these successor parties are and how they came into the picture. The original Capitol Chevrolet Company, which, though defunct, is a party appellant here, was incorporated in 1936. At the time it entered into the agency agreement with Lawrence in October 1942, and until its dissolution, its sole stockholders were appellants James A. Kenyon and Adams Service Co., the stock being equally divided between the two. Adams Service was a Nevada corporation wholly owned by appellants Norman and Alice Phelps. The Phelps appear at all times to have dealt with the property of Adams as though it were their own individually. In the summer of 1943 (shortly after the fire), Capitol's process of dissolution was commenced. As a first step Kenyon and Adams assumed and agreed to pay all the debts, liabilities and obligations of Capi-

tol. In June of 1943 its signed certificate of election to dissolve was filed with the Secretary of State. In December its certificate of winding up and dissolution was executed, and in June of 1944 was filed with the Secretary of State. All the assets of Capitol were distributed to its stockholders Kenyon and Adams. Thereafter Capitol's business was carried on as a partnership under the same name, the partners being Kenyon and Adams, who contributed to the partnership the assets they had received from the corporation. In 1946 a new corporation under the name of Capitol Chevrolet Co. was formed, which continued the business of the partnership. The stock in the new corporation was originally issued to Kenyon and to the Phelps. It appears that the new corporation, Capitol Chevrolet Co., did not assume the debts or obligations of its predecessors, and no judgment in the present proceeding was granted against it.

Subsequent to entry of the judgment for the RFC and to its payment by Lawrence the consolidated trial of Lawrence's cross-claims was held. Oral and documentary evidence was introduced, and the court had before it for consideration the evidence and proceedings in the main case, including the findings and judgment therein. The trial eventuated in an order for judgment in favor of Lawrence as against Capitol Chevrolet Company in No. 23171, and as against Kenyon, Adams Service Co. and the two Phelps in No. 30473. Consolidated findings of fact were accordingly made and a consolidated judgment entered for Lawrence as against all the appellants in the approximate sum of $76,000. In substance, the findings were that Capitol Chevrolet Company was negligent and that its negligence resulted in the destruction by fire of the tires stored with it. Lawrence was found not to have had knowledge of or to have participated in or contributed to Capitol's negligence.

Appellants indirectly attack the last mentioned finding. They contend that one Kissell, a guard on duty at the Ice Palace at the time the fire oc-

curred, was an agent of Lawrence; that Kissell was negligent in failing to prevent the occurrence of the incident out of which the fire grew; and that Kissell's negligence in the premises is imputable to Lawrence. Accordingly it is said that Lawrence must be held a joint tortfeasor with Capitol and is thus barred from recovery as against the latter.

The facts pertaining to Kissell's place in the general picture are related in our opinion on the original appeal, but for convenience we summarize them here. Upon removal of the tires to the Ice Palace, Defense Supplies requested Lawrence to arrange for a 24-hour watch service. In compliance with the request Lawrence made arrangements with the Burns Detective Agency to furnish the service. Defense Supplies was informed of the arrangement and approved the selection of Burns. Lawrence paid Burns for the service and was reimbursed in full by Defense Supplies. The guard Kissell was an employee of Burns. He was controlled by Burns and took his orders from that concern. One of his orders was not to permit anything to be taken from the premises except upon order or direction from Capitol. A written order from Capitol was presented directing him to permit McGrew to enter the engine room to remove pipe and equipment therefrom. An acetylene torch used by McGrew in cutting up a steel tank forming part of the equipment was the instrumentality which caused the fire. In the original case Capitol was held negligent in failing to ascertain of McGrew the means he was to employ in removing the equipment and also because of its failure to furnish adequate fire-fighting apparatus at the premises.

The status of Burns was that of an independent contractor. At common law it is universally recognized that the employer of an independent contractor is ordinarily not liable to third persons for losses attributable to negligence of the independent contractor. The employer's only duty is to exercise due care in selecting the contractor. There are, of course, exceptions to the rule. The

argument of appellants that the negligence of Burns or its employee, Kissell, is imputable to Lawrence must rest on the proposition that the facts of this case bring it within one or the other of the two widely recognized classes of exceptions. The first of these relates to fact situations where the status of the hirer of the independent contractor, or the nature of the work to be performed, is held to impose a non-delegable duty upon the hirer. Thus property owners who engage an independent contractor to do work requiring the excavation or obstruction of streets or sidewalks are liable to persons injured thereon as a consequence of the contractor's negligence. This duty of the property owner not to create hazards on adjacent streets and sidewalks is non-delegable. Colgove v. Smith, 102 Cal. 220, 36 P. 411, 27 L.R.A. 590; Robbins v. Hercules Gasoline Co., 80 Cal.App. 271, 251 P. 697; Sawaya v. De Cou, 60 Cal.App.2d 146, 140 P.2d 98. Persons who engage independent contractors to perform inherently dangerous undertakings are answerable in damages to third persons injured as a result of negligent performance. Miles v. A. Arena & Co., 23 Cal.App.2d 680, 73 P.2d 1260. Landlords and innkeepers are liable for injuries suffered by tenants or visitors because of unsafe conditions on the premises present as a result of the negligence of independent contractors employed by them, their duty to maintain the premises in a safe condition being held non-delegable. Brown v. George Pepperdine Foundation, 23 Cal.2d 256, 143 P.2d 929. Liability in the above types of cases is imposed regardless of contractual relationships. Obviously the case before us does not fall within the exceptions discussed, either directly or by analogy. An exhaustive examination of California statutes and American cases generally discloses that warehousemen do not have non-delegable duties apart from their contractual obligations.

The second type of exceptions to the general rule stated is based upon contractual relationships. One who contracts to perform an undertaking is liable to his promisee for the negligence of an independent contractor to whom he delegates actual performance. John H. Radel Co. v. Borches, 147 Ky. 506, 145 S.W. 155, 39 L.R.A.,N.S., 227; Sack v. A. R. Nunn & Son, 129 Ohio St. 128, 194 N.E. 1; Dippel v. Juliano, 152 Md. 694, 137 A. 514; Mahany v. Kansas City Railways Co., Mo., 254 S.W. 16, 29 A.L.R. 817; Continental Ins. Co. v. I. Bahcall, Inc., D.C., 39 F.Supp. 315. If Lawrence without further qualifications had contracted with Defense Supplies to provide a 24-hour watch, it would appear that the case would fall within this exception, and that Lawrence would have been responsible to Defense Supplies for the negligence of Burns or its employee. But the contract between Lawrence and Defense Supplies did not require Lawrence to provide guards. The arrangement with the Burns Agency was made at the express request of Defense Supplies, for the latter's benefit and at its expense. It is essential to bear in mind that Defense Supplies not only had full knowledge of the hiring of Burns to perform the desired guard service, but requested, acquiesced in, and approved of the arrangement. The exception is not applied in such circumstances. John H. Radel Co. v. Borches, supra; Sack v. A. R. Nunn & Son, supra; Dippel v. Juliano, supra; Continental Ins. Co. v. I. Bahcall, Inc., supra. Thus the facts absolve Lawrence of responsibility for negligence on the part of Burns or its agents, inasmuch as Lawrence did not delegate to Burns a duty it had itself contracted to perform. Defense Supplies was obliged to look to Burns, not to Lawrence, for the recovery of losses caused by the negligence of Burns or its employees. It follows as a necessary corollary that Lawrence is not foreclosed from recovering indemnity from its agent, Capitol, for a judgment rendered against and paid by it because of the negligence of Capitol.

Apart from this point the only issues on the appeal which appear to us debatable are whether Lawrence had been held liable to Defense Supplies on

account of its own negligence, or on account of its agent Capitol's negligence; and, secondarily, whether Capitol's successors in interest are responsible for Capitol's liability. These issues have been obscured by the protracted course the litigation has taken, and by the many changes in the business form of Capitol and its owners. The requirement laid down by the Supreme Court of a formal suit on the judgment by Reconstruction Finance Corporation has likewise tended to obscure the realities of what is basically a fairly simple case. Numerous procedural points have been raised by appellants, both below and here, growing out of the bifurcation of the litigation following upon the entry of Reconstruction Finance into the picture. These points are highly technical, and we regard them as lacking in merit. The important thing to note is that throughout the litigation the interests of all appellants have been and are identical—not conflicting or distinct, as they would have us believe. In actuality there is but one case, a single litigation arising out of the same occurrences and involving the same parties. The original suit and the consolidated cross-claims were heard and tried throughout by the same judge as component parts of an integrated law suit. This treatment of the matter is attacked, but we are satisfied that the procedure followed was in conformity with the spirit and purpose of the Federal Rules governing the disposition of litigation involving multiple claims.

■ We turn now to the remaining issues deemed to have substance. On conclusion of the trial of the main case the court had made findings to the effect that Lawrence and Capitol Chevrolet failed to exercise reasonable care for the protection and preservation of the tires stored with them by Defense Supplies, and that their negligence and that of McGrew "concurred and joined together" to destroy Defense Supplies' property. Appellants contend that these findings and the judgment entered thereon were conclusive upon the court in the disposition of the cross-claims of Lawrence. Accordingly, it is said, the court was foreclosed from resorting to the evidence taken on the main trial and from it determining, as it did, that the negligence of Capitol was primary and that of Lawrence merely imputed.

There are several answers to the argument. One of them is that the court at that time reserved for future determination the issues presented by the Lawrence cross-claim. A reserved issue relating to that claim was that Capitol's negligence was alone responsible for the destruction of the property, in event actionable negligence were found to exist. That the trial court regarded the liability of Lawrence as resting upon the negligence of its agent is made apparent in its opinion handed down at the time. And on the appeal this court observed that while the findings were not specific in this respect "the trial court's opinion shows that the decision as against Lawrence was grounded on imputed negligence." 164 F.2d 773, at page 776. The findings on Defense Supplies' trial, doubtless prepared by its counsel, were appropriate and responsive to the issues then being determined, but they were not responsive to those framed in the cross-claims reserved for consideration thereafter; and it is not to be assumed that the court intended to or did in fact decide the merits of the collateral dispute between Lawrence and Capitol. Compare Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902[1], 20 A.L.R.2d 695.

---

1. The *Booth-Kelly* decision, 183 F.2d at page 912, dealt with a cognate situation. We there said:

"It is next argued that it was not permitted to the court to find that Booth-Kelly's negligence was 'the active, direct, proximate and primary cause of the injury', for the reason that the judgment in the Powers case, which, because of the notice and opportunity to defend, was admittedly binding on both of the instant parties, had determined that the negligence of the Southern Pacific constituted the immediate proximate cause of the accident, and had determined that Booth-Kelly's negligence, if any, was a mere re-

■ Appellants Kenyon, Adams Service and the Phelps argue that the trial court ignored fundamental principles of due process in holding them bound "by evidence which was not offered and could not have been offered against them." The evidence referred to is, of course, the evidence introduced at the trial of Defense Supplies' case. If we are right in holding, as we have, that the litigation throughout constituted a single integrated proceeding, then there would seem to have been no need of reduplicating that evidence or of offering or introducing it at a later stage. It was before the court for consideration at any phase.[2] The court was entitled to assume, and obviously did understand, that the evidence then taken was going in for all purposes. But these appellants claim that they did not participate in or have the right to control the defense of the action in which the judgment for Defense Supplies was rendered, hence they are in nowise bound by the evidence introduced thereat. To our way of thinking, the assertion that these appellants did not direct or control the defense of the main suit is little short of preposterous. The surrounding circumstances, earlier related in this opinion, all point the contrary. If these parties did not control the defense of the action, who, one may justly inquire, did control it? As for Kenyon, he was present at the trial, testified in the course of it, and in response to an interrogation declared, "I am the owner of the Capitol Chevrolet Company." And so, along with his co-appellants, he *was* for all practical purposes Capitol Chevrolet Company. Moreover, it was obviously of vital consequence to these parties that the suit of Defense Supplies be vigorously contested, inasmuch as they had bound themselves to discharge any judgment that might be granted against Capitol. To that extent at least, they were in privity with Capitol.

But even if these appellants were not in privity with Capitol and did not control its original defense, they had assumed its liabilities and undertaken to pay them. The judgment ultimately rendered against Capitol on the Lawrence cross-claim was conclusive upon them. They argue, however, that this judgment against Capitol did not exist when the cross-claims were being tried, and that it was not and could not be formally put in evidence on that trial. But they do not dispute the fact that they were in control of Capitol's defense on that occasion and had full knowledge of the result. Indeed, the record shows that at a pretrial conference it was conceded that if Capitol were held liable to Lawrence they themselves would be liable.

Of course on the trial of the cross-claims the appellants were not precluded from introducing further evidence, or from recalling for cross-examination or other purposes the witnesses who had testified on the original trial, or from objecting to the applicability or materiality of specific items of evidence then taken. Ample opportunity to do that was afforded appellants. But what they sought, and complain of not getting, was the exclusion of all the evidence on what appears to us to be the specious ground that they were in no way affected by it.

■ Finally, one more argument will briefly be noticed. It is contended that

---

mote cause, and that such is now res judicata.

"The trial court rejected this contention and in this we think it was right. As the Oregon court said in the Astoria case, supra [City of Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404], 'The scope of the estoppel created by the judgment in the primary case embraces all of the issues determined by it.' But that determination here was simply that Powers received injuries to the extent of his judg-

ment, and that a contributing proximate cause of these injuries was the negligent failure of Southern Pacific to furnish him a safe place to work by failing to warn him of the presence of the wood cart. But which act of negligence was primary, or which active or direct, was not an issue in the Powers case."

2. See Jones v. Waterman S. S. Corp., 3 Cir., 155 F.2d 992, 997; Metzger v. Breeze Corp., D.C., 37 F.Supp. 693. And consult Rules 13(g) and 14, Fed.Rules Civ.Proc. 28 U.S.C.A.

the action on the cross-claims is barred by limitation. In the answers six separate statutes of limitation were pleaded by way of special defense. On the appeal all were abandoned save a claim that the Lawrence cause of action was accelerated because of an "anticipatory breach by repudiation" on the part of Capitol. It is conceded, however, as it must be, that a cause of action for an indemnitee is accelerated only at the option of the indemnitee, in this case, Lawrence.

Affirmed.

POPE, Circuit Judge (concurring).

I concur in Judge Healy's opinion. I add a few remarks concerning the dissent.

Judge Chambers invokes the rule that one who has been guilty of a tort concurrently or jointly with another cannot recover contribution or indemnity from the latter. Adams v. White Bus Line, 184 Cal. 710, 195 P. 389. In his view Lawrence Warehouse Company was a joint or concurrent tort-feasor by reason of the negligence of the watchman. This he predicates upon a further point, namely, that although the Burns Agency was an independent contractor, yet the character of Lawrence's duty was such as to make it liable notwithstanding that circumstance. He considers that such was just what the court held in its finding in the original action by Defense Supplies Corporation, that the negligence of Lawrence and Capitol Chevrolet "concurred and joined together to destroy plaintiff's goods." Like Judge Healy, I can find no authority for holding Lawrence liable for breach of a nondelegable duty. Even assuming that as against Defense Supplies it would be no defense to Lawrence that Burns Agency was an independent contractor, yet I think the situation is different in this suit in which Lawrence seeks indemnity from Capitol Chevrolet.

Behind the rule that the joint tortfeasor may not recover contribution or indemnity is the reasoning that he ought not to recover because he is " 'equally culpable or *particeps criminis*' ".[1] The reason for the rule is akin to the reason behind the clean hands maxim.

Now when we consider the rule against recovery by a concurrent or joint tortfeasor in the light of the reason behind it, it seems to me that it should have no application here as between Lawrence and Capitol Chevrolet. For whatever may have been Lawrence's duty to Defence Supplies yet as between Lawrence and Chevrolet, Lawrence cannot be regarded as " 'equally culpable or particeps criminis' " for the fault was not that of Lawrence,—it was that of the independent contractor only.

CHAMBERS, Circuit Judge (dissenting).

I dissent. While I realize the intendments which should be given a trial judge who saw and heard the witnesses, yet I believe here a clearly erroneous result has been reached. Therefore, I would reverse.

Parenthetically, I think I should state, while I respect "law of the case," we should keep in mind that as a result of Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931, our decision in Lawrence Warehouse Co., 164 F.2d 773, was destroyed entirely and completely. Therefore, we have no "law of the case" remaining from our first decision in 164 F.2d. There this court said, "Now if Capitol was negligent in safeguarding the goods it follows as a matter of course that its dereliction is imputable to its principal, Lawrence." 164 F.2d 773, 776.

The conclusion that imputed negligence was the sole basis of Lawrence's liability has to be taken from the trial court's opinion in Defense Supplies Corp. v. Lawrence Warehouse Co., D.C., 67 F. Supp. 16, rendered some three months before the findings of fact, conclusions of law and judgment were signed and filed

**1.** This expression from Gray v. Boston Gas Light Co., 114 Mass. 149, was quoted with approval in Union Stock Yards Co. of Omaha v. Chicago, B. & Q. R. Co., 196 U.S. 217, 226, 25 S.Ct. 226, 228, 49 L.Ed. 453.

on April 15, 1946. To me the findings and judgment holding Lawrence liable do not fix the liability of Lawrence on the ground that it was the innocent principal of a negligent agent. I read the findings as establishing a primary liability for negligence on the part of Lawrence and not an imputed one.[1] If resort to an opinion amplifies findings, well and good. But when the findings are inconsistent, I had supposed the law was that the "findings of findings" superseded the "findings of an opinion." However, the majority may be correct as a practical matter that the trial judge never intended to fix a primary responsibility on Lawrence, the record, as I read it, to the contrary notwithstanding.[2]

In the first case of Defense Supplies v. Lawrence and Capitol, to put it in the vernacular, bells have been rung that we cannot now unring: The findings in that case say:

\* \* \* \* \* \*

"V.

"On April 9, 1943, defendants Lawrence Warehouse Company and Capitol Chevrolet Company failed and omitted to exercise reasonable care and diligence for the protection and preservation of said goods so deposited and stored by plaintiff in this, that said defendants negligently permitted the use of said torch on said premises and negligently failed and omitted to see that it was used in a careful manner, and to provide adequate protection for said premises and said goods against the use of said torch, and maintained said

---

1. In findings No. V and VI in case No. 23,171, the court said:

"On April 9, 1943, defendants Lawrence Warehouse Company and Capitol Chevrolet Company failed and omitted to exercise reasonable care and diligence for the protection and preservation of said goods so deposited and stored by plaintiff in this, that said defendants negligently permitted the use of said torch on said premises and negligently failed and omitted to see that it was used in a careful manner, and to provide adequate protection for said premises and said goods against the use of said torch, and maintained said premises and said goods in a negligent and careless manner so as to permit them to become ignited and destroyed by fire. By reason of such negligence and carelessness, said premises and plaintiff's said goods were consumed and totally destroyed by fire.

"The negligence of defendants V. J. McGrew, Lawrence Warehouse Company, and Capitol Chevrolet Company concurred and joined together to destroy plaintiff's goods, as aforesaid."
Upon the foregoing findings the liability originally was fastened on Capitol and Lawrence.

2. On their appeal in case 23,171 (which was No. 11,418 herein, which resulted in our opinion in 164 F.2d 773), Lawrence and Capitol had an argument with much merit that any negligence of theirs was not concurrent with that of McGrew, the man with the acetylene torch who was found by the trial court to have started

the fire. But the trial court's judgment in 23,171 standing against Capitol and Lawrence as a consequence of the lapse of the corporate life of Defense Supplies Corporation which was held by the Supreme Court to abate the first appeal, 336 U.S. 63, 69 S.Ct. 762, we have to accept the fact that there was a liability of both Lawrence and Capitol to Defense Supplies and later the Reconstruction Finance Corporation when the latter sued on Defense Supplies' judgment and against which Capitol and Lawrence could not defend under the Supreme Court decision. Also there is much difficulty with the first judgment (which difficulty is now pure theory) in discovering any evidence that Capitol ever consented to McGrew's entering the Ice Palace. But I think the finality of the judgment in 23,171 prevents any further inquiry into the question of Capitol's consenting to McGrew's entry into the warehouse. It must now be taken that Capitol did "pass" McGrew into the premises. On the other hand, I cannot believe that we are now obligated to accept the trial judge's cursory remark in a footnote to his opinion of January 9, 1946, 67 F.Supp. 16, at page 21, where he says:

"The evidence indicates that the armed guard service was purely an additional and independent protective activity to prevent pilferage of the tires."
The statement that the guard was purely a protective activity to prevent pilferage (implying nothing more) has no support in the evidence, and such a conclusion was not carried into the findings.

premises and said goods in a negligent and careless manner so as to permit them to become ignited and destroyed by fire. By reason of such negligence and carelessness said premises and plaintiff's said goods were consumed and totally destroyed by fire.

### "VI.

"The negligence of defendants V. J. McGrew, Lawrence Warehouse Company, and Capitol Chevrolet Company *concurred and joined together*[3] to destroy plaintiff's goods, as aforesaid."

and then the conclusion of law is entered as follows:

" * * * and plaintiff Defense Supplies Corporation is entitled to judgment, in its favor against said defendants, jointly and severally, for the sum of $41,975.15 together with plaintiff's cost of suit."

Therefore, judgment was entered including the following:

"Now, Therefore, It Is Ordered, Adjudged and Decreed that Defense Supplies Corporation, the plaintiff herein, do have and recover from defendants Lawrence Warehouse Company, a corporation, Capitol Chevrolet Company, a corporation, and V. J. McGrew, jointly and severally, the sum of $41,975.15 together with plaintiff's costs and disbursements incurred in this action, amounting to the sum of $196.55."

To me the findings are clear and explicit that there was joint and concurrent negligence. To me, where there is respondeat superior liability it is unobjectionable to say the parties are jointly liable. Perhaps even "jointly negligent" could include respondeat superior liability, but how "concurred and joined together to destroy plaintiff's goods" can be taken to admit of the concept that the trial court did actually only fix respondeat superior liability upon Lawrence is beyond my understanding.

I think the finding means "concurrent negligence." Concurrent negligence is defined in Merrill v. Los Angeles Gas & Electric Co., 158 Cal. 499, 111 P. 534, 31 L.R.A.,N.S., 559. It is illustrated in Parkin v. Grayson-Owen Co., 25 Cal.App. 269, 143 P. 257 and Cummings v. Kendall, 34 Cal.App.2d 379, 93 P.2d 633. See also Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417; Salt River Valley Water Users' Association v. Cornum, 49 Ariz. 1, 63 P.2d 639, and Marinkovich v. Tierney, 93 Mont. 72, 17 P.2d 93, 95.

The judgment against both Capitol and Lawrence below may be unfair. I express no opinion. But when Reconstruction Finance Corporation sued on it, both Lawrence and Capitol were already irrevocably saddled with it. Similarly I think that Lawrence and Capitol were hobbled by the findings that the negligence of Lawrence and Capitol "concurred and joined together to destroy plaintiff's goods." I cannot see that the court's statement in its opinion three months earlier that "the court will retain jurisdiction to determine the issues of the cross-actions, if the parties therein concerned determine to pursue the same" saves the parties, inter sese, from the subsequent determination that was made in the same case in April. I would think this point was settled by our case of Ohlinger v. United States, 9 Cir., 219 F.2d 310.

In making the foregoing argument, I am fully aware of our case of Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902, 905 and the more recent case of Bedal v. Hallack & Howard Lumber Co., 9 Cir., 226 F.2d 526. What I have said here, I regard as wholly consistent.

If the trial judge in the issues between Capitol and Lawrence was free to go behind his findings in the original case, then mostly what troubles me is Lawrence's watchman, W. R. Kissell, who was on duty at the Ice Palace during the events which produced the fire. I think next to the contractor-workman who, with the aid of the acetylene torch, start-

---

3. Emphasis supplied.

ed the fire which burned down the Ice Palace and burned up Defense Supplies' tires, this watchman is the leading tort feasor shown in the record.

Here Lawrence undertook to "watch" the tires. True, the cost of watching was repaid Lawrence by Defense Supplies. But nevertheless the "watching" function was not placed in the hands of Capitol.

Now we accept it that Capitol issued the pass authorizing V. J. McGrew, a well-drilling contractor, to go to the Ice Palace and remove the tank. But the record does not indicate Capitol had any knowledge that an instrumentality like a torch, dangerous under the circumstances, was necessary to perform the job of removing the tank or would, in fact, be used.

Here Watchman Kissell for two days knew of the use of the torch. He made no effort to stop McGrew's use of the torch. He reported the fact to no one. He says, though, that he admonished McGrew to "be cautious" of fire.

Kissell was a watchman. In the absence of any specific orders for the post, I think a watchman's duties are to watch.[4] Isn't it that simple? And watch for what? Watch for things that might harm what he was hired to watch. And wouldn't the first things to watch for be possible active sources of thievery and fire?.

It is not pure conjecture to predict that the next time, if he ever meets the same set of circumstances, at the sight of the hazard Mr. Kissell will specifically advise those who control the building of the dangerous operation. Moreover, if he does not stop the torchman immediately, I can see him sending for a fire extinguisher and moving some pails of sand to the scene. As a matter of law, I would impress on him the same standard of care that he would exercise after losing the Ice Palace. He wasn't entitled to lose one building first before being careful.

As I see it, if Capitol caused the fire (and the judgment pursuant to Defense Supplies Corp. v. Lawrence Warehouse Co., D.C., 67 F.Supp. 16, so holds), by letting McGrew into the Ice Palace and by not affording fire fighting facilities, surely the watchman who did next to nothing about the obvious peril is not less than a concurring cause. And among those who are concurrently negligent in California there is no contribution or indemnity. Adams v. White Bus Line, 184 Cal. 710, 195 P. 389.

Here Capitol is held because it did not find out that McGrew would use a torch, because while McGrew was using the torch Capitol did not stop him (even though it didn't know) or perhaps because Capitol did not surround him with fire extinguishers. Yet Lawrence's watchman, Kissell, who, after the pass for McGrew to enter the premises was issued, saw and observed the danger and did nothing but to give him friendly advice to "be cautious."

But there is the question: Should Lawrence be charged with Kissell's negligence? Lawrence hired the "watching" from an independent contractor, the Burns Agency. Kissell was an employee of Burns. In considering this question, perhaps we should first examine the duty which Lawrence owed to Defense Supplies. Lawrence was the warehouseman. The statutes of California, now California Civil Code Sec. 1858.30 (which is Section 21 of Uniform Warehouse Receipts Act), imposed a duty of reasonable care upon the warehouseman. The contract between Lawrence and Defense Supplies did not add to or detract from the statutory duty.

I take it the primary undertakings of Lawrence with Defense Supplies were to (1) keep the tires in a warehouse and (2) watch them. Lawrence hired Capitol to do the first and Burns to do the second. Inasmuch as watching the tires was one of Lawrence's obligations, I think that it stands in the same position as if Kissell had been on the Lawrence

---

4. See Wenzel v. Commercial Insurance Co., 67 Cal. 438, 7 P. 817.

payroll. If the duty is owed by Lawrence to one such as Defense Supplies, I don't think the ordinary limiting rule about a contractor's not being responsible for a sub-contractor's negligence [5] and the rule that there is only a duty not to select a man generally known to be careless apply. See Brown v. George Pepperdine Foundation, 23 Cal.2d 256, 143 P.2d 929; Robbins v. Hercules Gasoline Co., 80 Cal.App. 271, 251 P. 697; Miles v. A. Arena & Co., 23 Cal.App.2d 680, 73 P.2d 1260; Sawaya v. De Cou, 60 Cal.App.2d 146, 140 P.2d 98; Colgrove v. Smith, 102 Cal. 220, 36 P. 411, 27 L.R.A. 590; City of Long Beach v. American President Lines, 9 Cir., 223 F.2d 853.

It can be said that I produce no fire case where a sub-contractor's watchman was involved. That is true. But I think that the cases in the law where one is not held for his sub-contractor's negligence all distill in the end to. be cases where the contractor in the situation had no duty to the injured party in the field where the injury occurred.

As pointed out in the trial court's opinion, Lawrence as a warehouseman by the California Warehouse Receipts Act, Sec. 21, supra, was under a duty to preserve the tires of Defense Supplies Corporation. This is pointed out in the opinion below, D.C., 67 F.Supp. 16 at 20. If Defense Supplies had hired the watchman and he had been its watchman (not a case of Lawrence hiring him at Defense Supplies suggestion and agreeing to reimburse the cost) then I would agree with the majority about Mr. Kissell.

Let's make another approach. The majority holds that Lawrence was liable because Capitol, its agent, was negligent. The Burns Agency and its man Kissell had exactly the same relation to Lawrence as did Capitol. The latter was "keeping," the former, "watching." The majority says Lawrence was liable to Defense Supplies only because of the negligence of Capitol. Then I say Burns, in

the same relationship, was negligent. That must be imputed to Lawrence. Why should Lawrence, caught by its liability for Capitol's negligence, be able to shift to Capitol the same liability Lawrence also has for Kissell's negligence? If we had Lawrence versus Kissell before us, I would impute Capitol's negligence to Lawrence. All of this would result in leaving Lawrence and Capitol where Reconstruction Finance Corporation's judgment left them—liable as joint tort feasors without rights of indemnity as to each other.

Here we have a case where one agent, Capitol, didn't prevent McGrew from carrying on a dangerous operation in a dangerous place. If that is correct, then it must be clearly erroneous to find that Lawrence is not to be charged with the conduct of the watchman who saw and observed the danger (for which Capitol in its ignorance was charged) and did nothing about it except say, "Be cautious." A standard of care should not shift so fast.

The concurring opinion partially justifies the result reached by the majority on the ground that the rule of "no contribution or indemnity between joint tort feasors" is really an equitable clean hands doctrine: that it should not be used when reason ceases.

Believing as I do that Lawrence was substantially (as a matter of law) to blame, I do not think that we reach the plane of "clean hands." But if we do reach that plane, I think we are getting out in front and ahead of the California cases if we introduce "clean hands" into the issues between these joint tort feasors.

It seems to me that if contribution were the law of California, this would be a splendid case for it. But it is not the law of California on joint tort feasors whose concurrent negligence contributed to and caused the damage. In this case, I adhere to the view that a California

---

5. The great body of law exculpating a contractor from his sub-contractor's negligence has been built up in the cases where no duty of care was directly owed to the injured party by the contractor. See Restatement of Agency, Section 214, and comments thereunder.

court would leave where it found him, the man who was most scared of the marshal's prospective writ and paid the judgment.

If the majority is right that Lawrence should be indemnified by Capitol, then I state that I concur with the majority as to the liability which it affirms as to James A. Kenyon, Adams Service Co., F. Norman Phelps and Alice Phelps.